# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 29, 1999 Session

## STATE OF TENNESSEE v. TERESA EVERETT

### Direct Appeal from the Criminal Court for Loudon County
### No. 9538      E. Eugene Eblen, Judge

_____

### No. E1999-02647-CCA-R3-CD
### February 15, 2001
_____

Following a trial on September 28, 1998, a Loudon County jury convicted Teresa Everett, the defendant and appellant, of attempt to commit second-degree murder.  The trial court subsequently sentenced her to serve fifteen (15) years in the Tennessee Department of Corrections.  The defendant presents the following issues on appeal (1) Whether the evidence was sufficient to convict her; (2) Whether the trial court erred by allowing improper impeachment; (3) Whether the trial court erred by allowing a lay-witness to testify to his opinion; (4) Whether the trial court erred by allowing the state to introduce character evidence; (5) Whether the state's closing arguments were improper; and (6) Whether the defendant should be granted a new trial based on newly discovered evidence.  Although the evidence is sufficient to support the verdict, we find the cumulative effect of all the remaining errors deprived the defendant of a fair trial.  Accordingly, we reverse the judgment of the trial court and remand the case for a new trial.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed and Remanded

JERRY SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., joined.  JAMES CURWOOD WITT, JR., J, joined in results only.

Rex A. Dale, Lenoir City, Tennessee for the appellant, Teresa Everett.

Paul G. Summers, Attorney General and Reporter; Ellen H. Pollack, Assistant Attorney General; J. Scott McCluen, District Attorney General; Roger Delp, Assistant District Attorney, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

During September of 1997, Charles Mills and Woodrow Fritts (the victim) were roommates in Mr. Fritts's mobile home. On the evening of September 9, 1997, the two roommates were home together when Mr. Fritts received a telephone call from the defendant, who had been a friend of Mr. Fritts for several years. On the phone, the defendant told Mr. Fritts that her boyfriend had assaulted her. Mr. Fritts then left to retrieve the defendant. Mr. Fritts and the defendant returned to the mobile home with some beer and cigarettes about forty-five (45) minutes later, some time before 10:00 p.m.

Mr. Mills went to his bedroom to sleep shortly after the couple's arrival. He was awakened shortly after 1:00 a.m. the next morning by the victim, who was shouting for Mr. Mills to help him. After Mr. Mills awoke, he left his bedroom to find Mr. Fritts bleeding profusely from apparent stab wounds to his neck, chest, and hands. Mr. Mills also saw the defendant, holding a knife, standing over the chair in which he assumed Mr. Mills had been sitting. The defendant was covered in blood, and appeared intoxicated. She started screaming at Mr. Mills and threatening to kill him. Mr. Fritts told Mr. Mills that the defendant had cut him, and he told Mr. Mills to call 911.

Mr. Mills called 911, and the police and paramedics arrived shortly thereafter. After police arrived, the defendant, who was still irate and screaming, told one of the officers that she had tried to kill Mr. Fritts. Police could smell alcohol on both Mr. Fritts and the defendant. Upon inspection of the residence, police found several knives. The paramedics treated Mr. Fritts, and he was flown to the University of Tennessee Hospital. Although his wounds were severe, he survived. Before trial, however, he died of an unrelated cause.

## SUFFICIENCY

When an appellant challenges the sufficiency of the evidence, this court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused originally enjoys a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the appellant to demonstrate the insufficiency of the convicting evidence. Id.

On appeal, the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. State v. Cabbage, 571 S. W. 2d 832, 835 (Tenn. 1978). Where the sufficiency of the evidence is contested, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); Tenn. R. App. P. 13(e). In conducting our evaluation of the convicting evidence, this court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S. W. 2d 776, 779 (Tenn. Crim. App. 1990).

The defendant argues that the State failed to present evidence sufficient to support an attempted second-degree murder conviction and that the jury should have found that her actions were taken in self-defense. Second-degree murder is the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). Attempted second-degree murder can be proven by evidence that the defendant knowingly acted with the intent to kill her victim and that the defendant's actions constituted "a substantial step toward the commission" of the murder. Tenn. Code Ann. § 39-12-101(a)(3).

In this case, Mr. Mills testified that, when he went to sleep, the defendant and the victim were in the trailer together. Mr. Mills was later awakened by the victim's cries for help. When he responded to the cries for help, Mr. Mills found the victim with his throat slit and severe stab wounds to his hands and chest. The victim then told Mr. Mills that the defendant had cut him. Mr. Mills also saw the defendant holding a bloody knife, screaming and swearing. Finally, after police arrived, the defendant told a police officer that she had tried to kill the victim. The jury was justified in inferring that the defendant had knowingly tried to kill the victim.

Furthermore, the only evidence of self-defense was the defendant's testimony that Mr. Fritts struck her first and that she had no memory beyond that. The question of whether a criminal defendant has acted in self-defense is one for the jury's determination. It is apparent the jury rejected the defendant's version of events as was their perogative. Tenn. Code Ann. § 39-11-201(a)(3). State v. Belser, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996). This issue is without merit.


**PRIOR CONVICTIONS**

In September of 1985, twelve years before trial, the defendant had been convicted of one count of sale of marijuana and received one year probation, one count of sale of a controlled substance and received five years probation, and one count of grand larceny, for which she received three years probation. All three sentences were to be served concurrently. The defendant's probation was subsequently revoked, and she was ordered to serve the remainder of her sentence in the Community Corrections program. Subsequently, her Community Corrections sentence was also revoked, and in November of 1986 she was ordered to serve the remainder of her sentence in the Department of Corrections. She was paroled sometime after that, but her parole was revoked, and she was returned to the Department of Corrections in September of 1989. Following her return to the penitentiary, the defendant was granted a furlough from which she did not return. For this, she was charged with and convicted of escape in May of 1991.

Before trial, the state gave the defendant notice, pursuant to Rule 609(a)(3) of the Tennessee Rules of Evidence, that it intended to use all of the above convictions to impeach the defendant if she testified. At a hearing immediately before the trial, the defendant only objected to the state's use of the marijuana conviction for impeachment, arguing that more than ten years had passed between the time that she had been released on that charge and the time of trial. The trial court disagreed:

> [T]he court feels that [all four of the convictions] are relevant in this situation, since all of these were concurrent charges, and she was serving probation, and then Community Corrections, and then

penitentiary time, and then violation of parole time and everything. None of them would have been completed under them all being served concurrently until she was finally released.

The court also held that the state would be limited to impeaching the defendant with the convictions themselves and would not be allowed to question the defendant about any probation or parole violations.

During trial, however, the state questioned the defendant about her prior convictions and about her prior drug and alcohol use which led to the revocation of her probation and community corrections. The defendant now challenges the trial court's ruling as to all of the prior convictions and the admission of the state's cross-examination regarding the defendant's prior drug and alcohol use leading to her probation violations. Because the defendant did not object to the introduction of the convictions for possession of a controlled substance, grand larceny or escape prior to or during trial, however, she has waived her right to object here. Tenn. R. Evid. 103(a); Furthermore, we need not decide whether the trial court erred in finding that the conviction for the sale of marijuana was not stale, because any error in that regard was harmless in light of the introduction of all of the other convictions. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

However, we are not inclined to ignore the state's impeachment of the defendant regarding her past alcohol and drug use, because the state clearly violated a pre-trial ruling by the court when the District Attorney General questioned the defendant in that regard. Even after the court clearly held that the state was prohibited from questioning the defendant about the circumstances that led to the violation of her probation or parole, the state initiated the following dialogue during its questioning of the defendant:

Q: Now I believe you had told us that eventually you had to go and serve that sentence.

A: Yes, sir.

Q: The reason for that being basically your usage of alcohol and drugs; wasn't it?

A: Excuse me?

Q: The reason you eventually had to go serve those sentences was your use of alcohol and drugs?

A: Yes, sir, I guess. I don't know. I violated my probation by not doing my community service.

-4-

Q: Let's talk about the next program. I'm not talking about probation; I'm talking about Community Corrections, where you had another opportunity not to have to go serve that sentence. Do you remember Community Corrections?

A: Yes, sir.

Q: The reason you eventually had to go to the women's prison was your use of alcohol and drugs on that occasion, wasn't it?

A: Yes, sir.

Although the defendant did not timely object to the introduction of such evidence, "[w]hether or not an appellate court should recognize the error and grant relief in the absence of an objection in the trial court must depend upon the facts and circumstances of the particular case." State v. Ogle, 666 S.W.2d 58, 61 (Tenn. 1984). If the admission of the improper impeachment were the only error in the record, we might ordinarily find it harmless. See Tenn. R. App. P. 36(b). However, in this case, it is the cumulative effect of the errors that requires reversal.

## OPINION TESTIMONY

During the state's direct examination of Criminal Investigator Jerry Lynn Rabern, one of the Police Officers that investigated the crime scene that night, and in an attempt to show that certain wounds received by the defendant were not inflicted by the victim but were self-inflicted thereby negating a claim of self-defense, the following colloquy occurred between the prosecutor and the officer:

Q: Officer Rabern, would you look at what has been marked as Exhibit Number 18, and tell us whether you can identify what you see here?

A: I see cut marks on the wrist of [the defendant].

Q: Is this a photograph of this defendant on the early morning of the 10th of September, 1997?

A: Yes, it is.

Q: And did you take this photograph yourself?

A: Yes, I did.

Q: And does this photograph fairly and accurately depict an injury, or a slice wound across the wrist of this individual?

A: Yes, it does.

Q: Officer Rabern, have you seen injuries like this before?

A: Yes, I have

Q: Have you seen them on attempted suicide kind of persons?

MR. DALE: I object to that, Your Honor. He's going to try to say this looks like an attempted suicide. A cut's a cut. He can only testify to his own personal knowledge of what he saw and observed.

ASST. GENERAL DELP: Your Honor, I believe he can tell us if he's seen such wounds before on–

THE COURT: Overrule the objection.

Q: Are those wounds typical of persons who would "cut their wrists?"

A: Yes, it is.

Because the state did not seek to qualify Officer Rabern as an expert, the defendant claims that this testimony constitutes impermissible opinion testimony.

Initially, we note that the admissibility of evidence is generally within the broad discretion of the trial court. Absent an abuse of that discretion, the trial court's decision will not be reversed. State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996). Rule 701(a) of the Tennessee Rules of Evidence addresses the admissibility of opinion testimony offered by non-experts. The rule provides, in relevant part:

> (a) If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
>
> (1) rationally based on the perception of the witness; and
>
> (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Tennessee Rule 701(a). The Rule was amended because, prior to 1996, it "precluded any lay opinion if the lay witness could substitute facts for opinion." Tenn. R. Evid. 701, Advisory Commission

Comments (1996).[1]  Although the 1996 amendment eliminated certain restrictions on opinion testimony, it was not meant to eliminate the distinction between expert and lay testimony. See Tenn. R. Evid. 702-706; Neil P. Cohen et al., Tennessee Law of Evidence § 701.3 (3d ed. Supp. 1999). "The distinction between an expert and a non-expert witness is that a non-expert witness's testimony results from a process of reasoning familiar in everyday life and an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992).  In this case, an opinion as to whether the defendant's wounds were self-inflicted could only result from expertise or considerable experience with such wounds.

Furthermore, subsection (a)(1) "now tracks Federal Rule 701, which has long been interpreted to require that the lay witness first lay a foundation as to the basis of his or her personal knowledge of the facts forming the basis of the opinion." See Cohen, supra; see also Tenn. R. Evid. 602 (stating that a witness that is not an expert may not testify absent a showing of personal knowledge).  In this case, the witness said that he had seen the types of wounds found on the defendant before, but he never answered where he had seen them.  Merely stating that he had seen those types of wounds before, without more, is not enough to satisfy the foundation requirement of Rule 701(a)(1).  State v. Sparks, 891 S.W.2d 607, 614 (Tenn. 1995).  Although again, this error, standing alone, might not require reversal, we consider this issue in light of the other errors noted below.

### PRIOR BAD ACTS

During the state's direct examination of Officer Brown, the first Officer to arrive on the scene, the following colloquy occurred:

Q: What kind of shape was the defendant in?

A:  I found her to be intoxicated, sort of uncooperating with me, and in an irate state, basically, until she wore down.

Q: Officer Brown, do you know this defendant?

A: Yes,  sir, fairly, yes, sir.

---

[1]Before 1996, Rule 701 provided:

(a) Generally.  If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences where:

(1) The opinions and inferences do not require a special knowledge, skill, experience, or training;

(2) The witness cannot readily and with equal accuracy and adequacy communicate what the witness has perceived to the trier of fact without testifying in terms of opinions or inferences;  and

(3) The opinions or inferences will not mislead the trier of fact to the prejudice of the objecting party.

Q: Have you seen her before when she'd been drinking?

A: Oh, yes, sir.

Q: And have you seen her in states like you saw her on that occasion?

A: Yes, sir.

Q: On one or many occasions?

A: Several.

Q: Have you seen her fighting or attacking other persons?

A: Oh, yes, sir.

Q: Would you say you've seen that actually once or more than once?

A: More than once.

Q: And if you have known her for how many years?

A: Thirteen or better, maybe.

Q: Was she acting out of character on this occasion, assuming that she had been drinking?

A: Out of character, sir?

Q: Out of her normal character when she'd been drinking?

A: That's – that's how I see her when she's drinking.  She's pretty wild.

Q: Have you come into contact with her on a lot of occasions that way?

A: Several occasions, yes.

Q: Have you been sent to other places over time when she was actually having a physical battle with other people?

A: Yes, sir.

The defendant now complains that Officer Brown's testimony was offered to prove the defendant's propensity for violence, and thus should have been excluded as impermissible character evidence.

The general rule is that evidence of prior conduct is inadmissible, especially when previous crimes or acts are of the same character as the charged offense, because such evidence is irrelevant and invites the "finder of fact to infer guilt from propensity." State v. Hallock, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). Moreover, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b).[2] Under Rule 404(b), the state could have introduced the disputed evidence if the evidence was pertinent to issues other than character. However, while we have previously observed that prior violent acts by a defendant against a victim "are relevant to show the defendant's hostility toward the victim, malice, intent, and a settled purpose to harm the victim," State v. Smith, 868 S.W.2d 561, 574 (Tenn. 1993), the defendant's prior violent acts toward a third party is not relevant to show her intent to kill the victim in this case. Moreover, we have previously declined to allow evidence of a defendant's prior violent acts, submitted by the State to rebut defense claims that the victim was the first aggressor. State v. Henderson, No. 03C01-9804-CR-00139, 1999 WL 398087 at * 6, (Tenn. Crim. App. at Knoxville, June 18, 1999); State v. Nelson, No. 03C01-9706-CR-00197, 1998 WL 694971, at *11 (Tenn. Crim. App. at Knoxville, September 9, 1998).

Furthermore, although the defendant did not object at trial to the evidence of prior bad acts, we cannot ignore this error here. The state introduced improper, prejudicial evidence about the

---

[2]Rule 404 of the Tennessee Rules of Evidence provides:

(a) Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion, except:

(1) Character of Accused. Evidence of a pertinent character trait offered by the accused or by the prosecution to rebut the same.

(2) Character of Victim. Evidence of a pertinent character trait of the victim of crime offered by an accused or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

(3) Character of a Witness. Evidence of the character of a witness as provided in Rules 607, 608, and 609.

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

defendant's propensity for violence. We cannot imagine, and the state has not offered, any legitimate reason for this evidence to have been introduced. That evidence, when viewed along with the inadmissible opinion testimony and the improper impeachment evidence noted above, constitutes plain error. Tenn. R. Crim. P. 52(b); State v. Bigbee, 885 S.W.2d 797, 800 (Tenn. 1994); State v. Maddox, 957 S.W.2d 547, 554 (Tenn. Crim. App. 1997).

## CLOSING STATEMENT

During his closing statement, the prosecutor told to the jury:

> I think that you have heard enough today to conclude that this defendant is a virtual little buzz saw when she gets angry and when she gets very intoxicated.
>
>  . . . .
>
> . . . [You also heard Officer Brown testify] that he has been called to numerous situations where this defendant was and had been engaging in physical – I'll call it combat for lack of a better term for it – and was just meaner than hell, basically.
>
>  . . . .
>
> . . . [The defendant] is a person who has done damage to herself on other occasions by cutting herself – and I think she said at least three – and I suggest to you that on this occasion you will find that number four occurred.

Where argument is found to be improper the established test for determining whether there is reversible error is whether the improper conduct "affected the verdict to the prejudice of the defendant." Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965); Bigbee, 885 S.W.2d at 809. The conduct complained of in this case is the improper use of opinion testimony, impeachment evidence, and prior bad acts evidence in a closing statement.

In determining whether the improper argument prejudiced the defendant, we must consider: 1) the conduct complained of, viewed in light of the facts and circumstances of the case; 2) the curative measures undertaken by the court and the prosecution; 3) the intent of the prosecutor in making the improper arguments; 4) the cumulative effect of the improper conduct and any other errors in the record; and 5) the relative strength and weakness of the case. State v. Middlebrooks, 995 S.W.2d 550, 560 (Tenn. 1999); Bigbee, 885 S.W.2d at 809. In this case, the prosecutor's arguments were improper because they were based on evidence that was improperly before the jury. Thus, the remaining issue is the effect of the improper arguments.

Because the evidence at issue was introduced, and not objected to at trial, the use of this evidence during closing, although erroneous, was not particularly egregious in the context of this case. Accordingly, the trial court gave only the standard pattern instruction in an attempt to cure these errors.[3] Furthermore, the defendant has offered no evidence regarding the prosecutor's motives. In short, factors one, two, and three do not weigh heavily either way.

---

[3]The court gave pattern jury instructions on prior convictions and told the jury that counsel's arguments were not evidence.

Factor four, however, is dispositive, because it is the cumulative effect of these errors, and the state's reliance on the erroneously introduced evidence, particularly the statement concerning the defendant's propensity for violence, that denied the defendant her fundamental right to a fair trial in this case. See Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471-72, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 641, 94 S.Ct. 1868, 1870-71, 40 L.Ed.2d 431 (1974) (stating that closing arguments could become "so infected with unfairness as to make the resulting conviction a denial of due process")). Finally, we note that the last factor, the strength of the state's case, does not save the error. The case was entirely circumstantial and was not strong enough to withstand errors of this magnitude.[4]

Accordingly, the judgment of the trial court is reversed, and the case is remanded for proceedings consistent with this opinion.

_____
JERRY SMITH, JUDGE

---

[4]The defendant also argued on brief that the defendant should be granted a new trial based on newly discovered evidence. Because this case is remanded for a new trial, the defendant's final argument is moot.