**STATE of Tennessee, Appellee,**

v.

**Larry Gene MADDOX and Nolan G. Pankey, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 5, 1997.

---

Ardena J. Garth (at trial), District Public Defender, Richard A. Heinsman, Jr. (at trial), Assistant District Public Defender, Chattanooga, Gerald L. Gulley, Jr. (on appeal), Knoxville, for Appellant Maddox.

Paul Bergmann, III, Chattanooga, for Appellant Pankey.

John Knox Walkup, Attorney General and Reporter, Kenneth W. Rucker, Assistant Attorney General, Nashville, William H. Cox, III, District Attorney General, C. Leland Davis, Assistant District Attorney General, Chattanooga, for Appellee.

### OPINION

RILEY, Judge.

The appellants, Larry Gene Maddox and Nolan G. Pankey, were convicted by a Hamilton County jury of aggravated robbery. Maddox was sentenced to ten (10) years in the Tennessee Department of Correction, and Pankey was sentenced to nine (9) years. On appeal, Maddox presents several issues for our review:

(1) whether the trial court erred by admitting evidence of prior bad acts in contravention to Tenn.R.Evid. 404(b);

(2) whether the trial court erred by introducing certain letters into evidence, notwithstanding the state's failure to provide these letters to the defense prior to trial;

(3) whether the trial court erred in refusing to compel the state to divulge the name of a confidential informant;

(4) whether the trial court erred by denying a request to charge the jury on accomplice testimony; and

(5) whether the trial court erred in charging the jury on parole eligibility.

Pankey joins in Maddox's contention that the trial court erred in charging the jury on parole eligibility and raises two additional issues for our consideration: (1) whether the evidence was sufficient to sustain the jury verdict; and (2) whether the trial court erred

in denying his motion for severance of defendants. After a thorough review of the record, we affirm the conviction of Pankey, but reverse the conviction of Maddox and remand for a new trial.

### FACTS

On December 31, 1993, at approximately 9:00 a.m., Royce Patterson, an employee of Longhorn Steaks in Chattanooga, opened the back door of the restaurant for what appeared to be a routine delivery. Suddenly, two armed men wearing ski masks entered and ordered him and the other employees to get on the ground. While one man kept watch over the employees, the other man broke down the door to the office in the restaurant. Randy Stewart, the general manager of the restaurant, was forced at gunpoint to empty the safe and place all of the money in a gray gym bag. The men then forced the employees into a walk-in cooler and left.

The proof at trial showed that Patterson had worked with defendant Pankey at Longhorn Steaks at some time prior to this incident. When the men appeared at the back door, Patterson recognized Pankey from his voice and his build. Patterson testified that he and Pankey had had a discussion that the restaurant would be "easy to rob." He testified that he could positively identify Pankey as the man who broke down the office door. However, he could not identify the other man with him.

Employees Mike Ermer and Eric Millsaps, both of whom were present during the robbery, testified to the same basic facts of the incident. Although neither could positively identify Maddox or Pankey as being the men who robbed the restaurant, Millsaps could describe their clothing. He testified that the "big guy" had on two or three jackets, fatigue pants and boots and wore a brown ski mask. He described the smaller person as having very light skin and wearing a trench coat and ski mask.

Stewart testified that he was on the phone with his regional manager when he heard the commotion. He stated that the door to the office was kicked in and a man in a ski mask

put a gun in his face. He also could not identify the man in the ski mask, but stated that he had very light skin. The man then forced him to open the safe and put three metal lock boxes and several bank bags filled with money into a gray gym bag. He turned over around $9,000 to the man, at least $6,000 of which was cash.

Melody Dawn Essex, Maddox's live-in girlfriend at the time of the incident, testified that Maddox had asked to borrow her car the night before the robbery. She agreed. Around 10:00 a.m. on the morning of the robbery, Maddox and Pankey entered her apartment carrying weapons and a gray gym bag. Both men were saying "we did it" and were laughing. They emptied the gym bag and pulled out metal boxes and bank bags filled with money. One of the men counted out the money, which amounted to over $6,000. The men then divided the money between themselves.

The three of them traveled to Wright's Motor Company so that Pankey could buy a blue Honda Prelude. Pankey paid $800 in cash as a down payment for the car. They then went to D & D Motors where Maddox purchased a Mazda RX–7. He paid $800 down plus the payment for a month in cash.

Essex testified that she had never seen Maddox or Pankey with enough money to buy cars prior to this time. When she asked Maddox how they obtained all that money, he told her it was none of her business. She stated that while on the Wright's Motor lot, Maddox gave her $200.

Pankey told her several days later that he and Maddox had robbed the Longhorn Steakhouse. When she confronted Maddox with this, he admitted to the robbery.

Essex testified that on December 31, Maddox was wearing an Army jacket, camouflage pants and black boots. Pankey was wearing a long, light-colored trench coat, beige pants and black boots.

She stated that at some point prior to this incident, Maddox asked her to get some brown thread. After she forgot to get the thread the first time, Maddox became angry. Again he asked her to get the thread, and she forgot a second time. Once again, Maddox became angry. Several days before the robbery, Essex brought Maddox some brown thread.

Officer Terry Yates with the Chattanooga Police Department testified that he found two ski masks laying on a road that runs behind the restaurant. Both ski masks had the mouths stitched. At least one of the ski masks was sewn with brown thread.

Steve Dilbeck, owner of D & D Motors, verified that Maddox had purchased a Mazda RX–7 on December 31 by paying $800 in cash as a down payment and a month's payment in advance. Eddie Wright, owner of Wright's Motor Company, testified that Pankey had purchased a blue Honda Prelude on December 31. Wright stated that Pankey paid $800 as a down payment.

Willy Hodges, an employee of Wright's Motor Company, testified on behalf of Pankey. He stated that on December 31, Pankey was present at Wright's Motor Company from approximately 8:15 a.m. to 10:00 a.m.

Maddox did not present any proof.

The jury found both Maddox and Pankey guilty of aggravated robbery. The trial court sentenced Maddox to ten (10) years and Pankey to nine (9) years in the Tennessee Department of Correction. From these convictions, Maddox and Pankey now bring this appeal.

### MADDOX–PRIOR BAD ACTS

#### A.

■ Maddox contends that the trial court erred in allowing the state to present evidence of prior bad acts through the introduction of letters written by him to Essex. He argues that the trial court did not conduct a hearing out of the jury's presence to determine if the probative value of the evidence was outweighed by its prejudicial effect as required by Tenn.R.Evid. 404(b). He claims that the evidence was extremely prejudicial and not material to any issue before the jury. Therefore, he insists that the evidence was erroneously admitted.

The state introduced letters that Maddox had written to Essex while Essex was incarcerated in Georgia on a forgery conviction.

In one of the letters, Maddox appears to be threatening Essex not to tell the police what she knew about the robbery. In the letter dated June 28, 1994, Maddox states, "[a] real good friend of mine, that I never told you about, got wind of someone snitching on me. I hate to say, who ever [sic] is trying to snitch, is headed for a six foot trail ... I just wanted to know if or would you sell me out to save your own ass ..."

"Any attempt by an accused to conceal or destroy evidence, including an attempt to suppress the testimony of a witness, is relevant as a circumstance from which guilt of the accused may be inferred." *Tillery v. State*, 565 S.W.2d 509, 511 (Tenn.Crim.App. 1978); *see also Sotka v. State*, 503 S.W.2d 212, 220 (Tenn.Crim.App.1972). Although these passages of the letter could be subject to different interpretations, it is a fair inference that Maddox was delivering a veiled threat to keep Essex from talking to law enforcement authorities. As a result, we find that this evidence is relevant and admissible.

**B.**

 However, we find that other portions of the letters and Essex's testimony were irrelevant and highly prejudicial. In that same letter, Maddox says, "[o]h, I have somewhat of some bad news ... I'm gonna have to cop out for 10 yrs. so I'll be gone for another 3 yrs ..." It is unclear whether this refers to the instant case or another case. Additionally, Essex was allowed to testify that she, Maddox and Marcus Robinson had a plan whereby Robinson would rob the Dunkin Donuts where Essex was working in order to get money for Maddox's bond.

The state then introduced another letter from the defendant dated June 9, 1994, which stated the following:

Marcus and Peaches came to see me not to [sic] long ago. I found out why he didn't do that at the doughnut place. Akim had backed out on him. Anyway, they're charging him with first degree attempted murder. Marcus was saying they were gonna drop the charges against Peaches and me with probation, but that means we would have to plead guilty. I don't need to plead guilty to something like that. That

means that will go on my state jacket in other word[s] on my record. That's why I'm gonna get a separate trial.

**C.**

In a criminal trial, evidence that a defendant has committed some other crime independent of that for which he is accused, is generally not admissible because it is irrelevant. *Bunch v. State*, 605 S.W.2d 227, 229 (Tenn.1980). However, if evidence of another crime is relevant on a contested issue at trial, the trial court must satisfy certain conditions before admitting such evidence:

(1) [t]he court upon request must hold a hearing outside the jury's presence;

(2) [t]he court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) [t]he court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn.R.Evid. 404(b). These safeguards were enacted in accord with our Supreme Court's holding in *State v. Parton*, 694 S.W.2d 299 (Tenn.1985). Tenn.R.Evid. 404, Advisory Commission Comments.

**D.**

In the present case, the trial court did not conduct an appropriate hearing in order to determine if the letters were relevant on a material issue at trial and if their probative value outweighed the prejudicial effect. Additionally, because much of what is discussed in the letters is immaterial and irrelevant, their prejudicial effect greatly outweighed their probative value.

This is especially true regarding the alleged plan to rob Dunkin Donuts. Because this alleged plan involved the same type of crime for which Maddox was being tried, the jury might believe that he has a propensity to commit robbery. *See State v. McCary*, 922 S.W.2d 511 (Tenn.1996); *State v. Luellen*, 867 S.W.2d 736 (Tenn.Crim.App.1992). In *State v. Rickman*, the Supreme Court recognized:

[t]he general rule excluding evidence of other crimes is based on the recognition that such evidence easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime regardless of the strength of the evidence concerning the offense on trial. *Anderson v. State*, 165 Tenn. 569, 56 S.W.2d 731 (1933). Such a potential particularly exists when the conduct or acts are similar to the crimes on trial. *Parton*, 694 S.W.2d at 303.

876 S.W.2d 824, 828 (Tenn.1994).

Likewise, the references in the June 9th letter to a first degree attempted murder charge against Marcus and dropping the charges against "Peaches and me with probation" apparently related to other pending charges. They were totally irrelevant and highly prejudicial.

■ The trial court also erred by allowing Essex to testify regarding Maddox's involvement in a prior forgery offense. Maddox's counsel attempted to impeach Essex with a prior forgery conviction. He asked her on cross-examination, "[y]ou took a check that belonged to, I believe it was Patrick Williams?" The trial court then allowed Essex to testify that Maddox was the one who actually stole the check, and Essex endorsed it. Maddox's alleged involvement in Essex's forgery offense was not legitimately "opened up" by the defense. Furthermore, the probative value of the evidence was greatly outweighed by its prejudicial effect. As a result, this evidence was improperly admitted.

### E.

■ The state concedes that the letters were improperly admitted; however, it contends these errors were harmless. The improper testimony related to defendant's alleged involvement in (1) the Dunkin Donuts scheme; (2) some unspecified charge with "Marcus" who was charged with attempted first degree murder; and (3) an alleged theft of a check in Georgia that led to Essex's forgery conviction. Considering the nature and magnitude of these errors, we are unable to conclude that they are harmless beyond a

reasonable doubt. Tenn.R.App.P. 36(b); *State v. McCary*, 922 S.W.2d at 515.

### MADDOX—STATE'S FAILURE TO PRODUCE LETTERS

■ Maddox next argues that the trial court erred by introducing the letters into evidence since the state failed to provide these letters to the defense prior to trial. He claims that the state did not use reasonable diligence to comply with Tenn.R.Crim.P. 16 and contends that the state acted in bad faith.

This issue is waived because Maddox did not include this in his motion for new trial. Tenn.R.App.P. 3(e); *State v. Walker*, 910 S.W.2d 381, 388 (Tenn.1995).

### MADDOX—FAILURE TO DIVULGE THE CONFIDENTIAL INFORMANT

Maddox asserts that the trial court erred by refusing to compel the state to divulge the name of a confidential informant. Thus, he claims that he was deprived of discovering potentially relevant information.

Detective Eidson testified that he received a call from an inmate in a workhouse who claimed that Essex, who was incarcerated in a jail in Georgia, had information pertaining to the Longhorn Steakhouse robbery. After Detective Eidson interviewed this inmate, he then contacted Essex. Defense counsel attempted to elicit the informant's name, but the trial court ruled that the name of the informant need not be revealed.

■ Subject to certain limitations, the state is entitled to withhold from the defendant the identity of an informant. *State v. Dowell*, 705 S.W.2d 138, 141 (Tenn.Crim.App. 1985); *Roberts v. State*, 489 S.W.2d 263, 264 (Tenn.Crim.App.1972). However, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957); *see also State v. Brown*, 823 S.W.2d 576, 587 (Tenn.Crim. App.1991). The decision to disclose an informant's identity is left to the sound discretion

of the trial court. *State v. Brown*, 823 S.W.2d at 586–87.

■ Maddox has not shown that disclosing the name of the inmate would have been helpful to his defense or was essential to a fair determination of the trial. *See State v. Taylor*, 763 S.W.2d 756, 760 (Tenn.Crim.App. 1988). The trial court did not abuse its discretion. This issue has no merit.

### MADDOX—ACCOMPLICE TESTIMONY

In his next assignment of error, Maddox claims that the trial court erred in refusing to charge the jury on accomplice testimony. He claims the evidence created a fair inference that Essex was an accomplice to the robbery. Therefore, he asserts that the jury should have been instructed that Essex's testimony should have been corroborated in order to convict Maddox of aggravated robbery. He contends that Essex's testimony was not independently corroborated; therefore, the trial court should have directed a judgment of acquittal.

■ A conviction may not be based solely upon the uncorroborated testimony of an accomplice. *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn.1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn.1992); *State v. Henley*, 774 S.W.2d 908, 913 (Tenn.1989). In *State v. Bigbee*, our Supreme Court reiterated the rule relating to corroboration of accomplice testimony:

> There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged.

*Id.* at 803 (quoting *State v. Gaylor*, 862 S.W.2d 546, 552 (Tenn.Crim.App.1992)).

■ When the undisputed evidence clearly establishes the witness is an accomplice as a matter of law, the trial court, not the jury, must decide this issue. *Ripley v. State*, 189 Tenn. 681, 687, 227 S.W.2d 26, 29 (1950); *State v. Lawson*, 794 S.W.2d 363, 369 (Tenn.Crim.App.1990). On the other hand, if the evidence adduced at trial is unclear, conflicts, or is subject to different inferences, the jury, as the trier of fact, is to decide if the witness is an accomplice. *Id.* If they so find, the issue of whether the witness's testimony has been sufficiently corroborated becomes a matter entrusted to the jury, as the trier of fact. *Bigbee*, 885 S.W.2d at 803.

■ Although it is a close question, we believe the jury should have been instructed on the law relating to an accomplice. Essex's own testimony showed that she furnished thread to Maddox under suspicious circumstances, allowed the use of her car by Maddox, saw Panky and Maddox with weapons and a large amount of cash, and in fact received some of the funds. She was not an accomplice as a matter of law, yet it was a jury question whether all the facts and circumstances lead to a reasonable inference that she was an accomplice. If the jury concluded she was more involved than she admitted, she could have been found to be an accomplice.

■ Often such error is harmless. Tenn.R.App.P. 36(b); *State v. Perkinson*, 867 S.W.2d 1, 8 (Tenn.Crim.App.1992); *State v. Carpenter*, 773 S.W.2d 1, 12 (Tenn.Crim.App. 1989). However, in this case virtually all the incriminating evidence against Maddox is tied to Essex's testimony. Furthermore, the other errors with regard to the prejudicial admission of evidence of other alleged crimes are significant. The cumulative effect of these errors denied Maddox his fundamental right to a fair trial. *State v. McCary*, 922 S.W.2d at 515; *State v. Bigbee*, 885 S.W.2d at 817.[1]

---

1. Although Pankey did not raise the accomplice issue, we conclude the failure to give the accomplice jury charge was harmless error as to Pankey. Unlike Maddox, Pankey was clearly identified at the scene of the robbery by one of the employees.

### MADDOX AND PANKEY—JURY CHARGE ON PAROLE ELIGIBILITY

#### A.

Maddox and Pankey contend that the trial court improperly charged the jury on the range of punishment and their parole eligibility pursuant to Tenn.Code Ann. § 40–35–201(b)(2)(A).

■■■ The trial court instructed the jury that they could "weigh and consider the meaning of a sentence of imprisonment." The jury was further informed that "the minimum number of years a person sentenced to imprisonment for this offense must serve before reaching the earliest release eligibility date is: Aggravated robbery, 0.94 years." Although the defendants do not challenge the accuracy of the information set forth in the charge, they contend the charge should not have been given. We agree.

#### B.

This jury charge was given pursuant to Tenn.Code Ann. § 40–35–201(b), which allows the jury in non-capital cases to consider the possible penalties for the offense charged. Tenn.Code Ann. § 40–35–201(b)(2)(A) further provides as follows:

(i) When a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment for the offense charged and any lesser included offenses. Such instruction shall include an approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date. Such calculation shall include such factors as the release eligibility percentage established by § 40–35–501, maximum and minimum sentence reduction credits authorized by § 41–21–236 and the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, if applicable.

(ii) Such instructions to the jury shall also include a statement that whether a defendant is actually released from incarceration on the date when such defendant is first eligible for release is a discretionary decision made by the board of paroles based upon many factors, and that such board has the authority to require the defendant to serve the entire sentence imposed by the court.

This section applies only to "persons committing offenses on or after July 1, 1994." Public Acts 1994, ch. 847 § 3, July 1, 1994. The robbery for which Maddox and Pankey were being tried occurred on December 31, 1993. Therefore, the trial judge erred in charging the jury pursuant to Tenn.Code Ann. § 40–35–201(b)(2)(A).

#### C.

■■■ Both appellants also challenge the constitutionality of the statute, citing *Farris v. State,* 535 S.W.2d 608 (Tenn.1976), in support of their position. However, because we find that the instruction was erroneously given, we need not address the issue of the statute's constitutionality.

#### D.

■■■ Since Maddox's conviction must be reversed for other reasons, it is unnecessary to address this issue as to him. As to Pankey, we find the charge had no effect upon the jury's determination of guilt and was clearly harmless beyond a reasonable doubt. Tenn.R.App.P. 36(b); *see State v. Cynthia Roberson and Rhodney Roberson,* C.C.A. No. 02C01–9503–CC–00059, 1995 WL 765009 (Tenn.Crim.App. filed December 28, 1995, at Jackson) (Summers, J., dissenting).

### PANKEY—SUFFICIENCY OF THE EVIDENCE

Pankey claims that the trial court erred in denying his motion for judgment of acquittal. He contends that because Willy Hodges testified as to his whereabouts during the time that the robbery was committed, he could not have been at the Longhorn Steakhouse at that time. Therefore, he argues that the evidence is insufficient to sustain his conviction.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Abrams*, 935 S.W.2d 399, 401 (Tenn.1996).

■ Great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Bigbee*, 885 S.W.2d at 803; *State v. Harris*, 839 S.W.2d 54, 75 (Tenn.1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id.; State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

■ Royce Patterson positively identified Pankey as one of the men who robbed the Longhorn Steakhouse on December 31, 1993. Although Hodges testified that Pankey was present at Wright Motors during the time of the robbery, a rational trier of fact could choose to believe Patterson's version instead. Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence, are resolved by the trier of fact. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn.Crim.App.1995). Therefore, the evidence is sufficient to sustain Pankey's conviction.

### PANKEY—DENIAL OF MOTION FOR SEVERANCE OF DEFENDANTS

In his final assignment of error, Pankey contends that the trial court abused its discretion in denying his motion for severance of defendants. He bases his argument on the erroneous admission of the letters written by Maddox. He claims that the introduc-

tion of these letters served to implicate him in the aggravated robbery, thereby denying him his constitutional right to confrontation pursuant to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

■ Tenn.R.Crim.P. 14(c)(2)(i) and (ii) provide that the court shall grant a severance of defendants if deemed appropriate to promote a fair determination of the guilt or innocence of a defendant. The decision as to whether or not to grant a severance is left to the sound discretion of the trial judge, and this decision will not be disturbed unless the defendant is unfairly or unduly prejudiced. *See State v. Coleman*, 619 S.W.2d 112, 116 (Tenn.1981); *State v. Woods*, 806 S.W.2d 205, 211 (Tenn.Crim.App.1990); *State v. Kyger*, 787 S.W.2d 13, 20 (Tenn.Crim.App.1989); *State v. Hodgkinson*, 778 S.W.2d 54, 61 (Tenn.Crim.App.1989); *State v. Wiseman*, 643 S.W.2d 354, 362 (Tenn.Crim.App.1982).

■ We find Pankey's contention to be without merit. Our reasoning for that finding is two-fold. Firstly, we find that there is no *Bruton* violation. Pankey is not implicated in any of the letters. Maddox makes no reference, express or implied, to Pankey.

■ Secondly, Pankey has not demonstrated that he was prejudiced "to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty." *State v. Burton*, 751 S.W.2d 440, 447 (Tenn.Crim.App.1988) (quoting *Hunter v. State*, 222 Tenn. 672, 682, 440 S.W.2d 1, 6 (1969)). Indeed, Pankey was the only one of the defendants who was positively identified at the scene of the robbery. Therefore, because severance was not necessary to promote a fair determination of Pankey's guilt or innocence, the trial court did not abuse its discretion in denying the motion for severance.

### CONCLUSION

The cumulative nature of the errors regarding Maddox more probably than not af-

fected the jury's verdict; as a result, he was deprived of his right to a fair trial. Therefore, his conviction is reversed and remanded for a new trial. However, any errors regarding Pankey were clearly harmless. Accordingly, the judgment of the trial court as to Pankey's conviction is affirmed.

SMITH J., and CHRIS CRAFT, Senior Judge, concur.