# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs July 2001 Session

## STATE OF TENNESSEE v. WILLIAM J. FORD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-11016     Chris Craft, Judge**

---

**No. W2000-01205-CCA-R3-CD - Filed July 12, 2002**

---

A Shelby County grand jury indicted the defendant for first degree murder, and the State elected to seek the death penalty in this case. Following the guilt phase of the defendant's bifurcated trial, the trial jury convicted him as charged. At the close of the sentencing phase, the trial jury further found that the evidence supported the existence of the alleged aggravating factor but concluded that this factor did not outweigh the mitigating factors. The jury, therefore, sentenced the defendant to serve a life term without the possibility of parole. Subsequently, the defendant filed a new trial motion which the trial court denied. On appeal, the defendant contends (1) that the evidence is insufficient to support his conviction; (2) that the trial court erred in barring him from the courtroom because of his outbursts in the jury's presence; (3) that the trial court erred in not declaring a mistrial after deciding that the defendant could not be present at his trial because of these outbursts; (4) that the trial court erred in admitting three letters written by the defendant; and (5) that the prosecution, in its closing argument, impermissibly shifted the burden of proof to the defense by commenting on a witness mentioned by the defense in its opening statement but not called to testify at trial. Upon reviewing these issues, we find that none merit relief and, therefore, affirm the defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Gerald Skahan, Memphis, Tennessee, for appellant, William J. Ford.

Paul G. Summers, Attorney General & Reporter; Mark E. Davidson, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Henry, Assistant District Attorney General, for appellee, State of Tennessee.

# OPINION

## Factual Background

On February 4, 1999, the victim, Dilanthious Drumwright,[1] was a high school student walking from school with a group of other young people of various ages. Within this group were Soibhan Fleming, Tiffany White,[2] and Alfonzo Bowen. In order to avoid a potential confrontation resulting from an altercation which had taken place further up the street on the previous day, the students had left the street they would have ordinarily traveled. Nevertheless, two vehicles pulled up near the group. Demond Gardner drove the car in which the defendant and Jerry Joyce were riding. Chris Lewis drove the other vehicle with his brother Derrick Lewis as a passenger.[3]

Fleming, White, Gardner, Joyce, and Bowen testified for the State as eyewitnesses to the incident. Gardner related that the defendant had left Gardner's car and obtained a weapon from someone in Chris Lewis' vehicle prior to the shooting. All five witnesses identified the defendant as the shooter and recalled that multiple shots had been fired. Bowen, in fact, stated that he had heard nine or ten shots, and Officer Sherman Bonds of the crime scene unit testified that he had recovered nine spent shell casings and one live round in the immediate area. Additionally, numerous individuals testified concerning threatening comments made shortly before the shooting by the defendant or others in the automobiles. It was determined that one of the shots had hit the victim in the back resulting in his death.

After firing the weapon, the defendant returned to Gardner's car, and both vehicles left the scene. Gardner recounted that he thereafter drove the defendant to Chris Lewis' house, where the defendant left the car taking the weapon with him. When the defendant returned shortly thereafter, Gardner saw no weapon. He then took the defendant to the defendant's home.

Following the defendant's arrest for this crime, the defendant composed and sent three letters to Gardner. These letters instructed Gardner to relay to various potential defense witness what their testimonies should include and to threaten female witnesses involved in the case. Gardner turned these letters over to the authorities before the defendant's trial, and all three were later admitted in that proceeding.

After hearing the above-outlined and additional poof, the jury convicted the defendant of first degree murder and, at the conclusion of the sentencing phase of the trial, sentenced him to life without parole for the offense.[4] In this appeal the defendant raises the aforementioned challenges to his conviction.

---

[1] The record contains different spellings of the victim's name; however, in this opinion we will use the one utilized in the indictment.

[2] This witness is also referred to as Tiffany Dobbins.

[3] Derrick Lewis testified for the defense at trial regarding the defendant's consumption of alcohol in the hours prior to the murder.

[4] Since the defendant does not challenge his sentence, we will not summarize the proof from the sentencing phase.

**Sufficiency**

Through his first issue the defendant asserts that the evidence is insufficient to support his conviction for first degree murder. More specifically, the defendant alleges that the State did not meet its burden of proof regarding premeditation.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. While the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded," a criminal offense may be established exclusively by circumstantial evidence. State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); see also, e.g., State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987).

Turning to the law regarding premeditation, Tennessee Code Annotated section 39-13-202(a)(1) defines first degree murder as the "premeditated and intentional killing of another." Tenn. Code. Ann. § 39-13-202(a)(1). Furthermore, Tennessee Code Annotated section 39-13-202(d) states:

> As used in subdivision (a)(1) "premeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-202(d).

The existence of this element remains a question for the jurors to determine and may be established by proof of the manner and circumstances of the killing. See State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998); State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). Factors which tend to establish the existence of premeditation "include: the use of a deadly weapon upon an

unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime, and calmness immediately after the killing." State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997). In addition, State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995), provides that a jury faced with resolving this question also may utilize facts raising the inference of a motive and/or the implementation of a preconceived design.

In the instant case the proof supports a finding of at least three of these factors. First, the defendant shot the unarmed victim in the back as the victim walked away from the defendant. Second, Bowen indicated that the defendant had said "LMGK" and "VLK" prior to firing the weapon. Multiple witnesses had explained that "LMGK" meant "Lemoyne Garden Killer" and "VLK" meant "Vice Lord Killer." Thus, the defendant had arguably announced himself to be a killer before taking the victim's life. Moreover, the comments suggest a gang-related motive.[5] Third, the defendant left the vehicle in which he had been riding and procured a weapon from someone in Chris Lewis' car which was parked nearby. Faced with this evidence, we find sufficient proof of premeditation.

As previously noted, first degree murder also involves the "intentional killing of another." See Tenn. Code Ann. § 39-13-202(a)(1). Within the latter portion of the defendant's argument for this issue, he contends that the State additionally failed to prove that he had acted with the intent to kill. To support this assertion, the defendant cites his alleged intoxication; questions that the jurors asked the court during their deliberations; the fact that only one person in the group had been hit (and this by a single shot); testimony that the weapon was pointed in the air; and an alleged heated exchange preceding the shots.

Concerning the defendant's alleged intoxication, the trial court instructed the jury that voluntary intoxication can be found to negate the requisite mental state. In addition, Derrick Lewis did testify at trial that the defendant had been intoxicated at the time of the offense. However, while Gardner testified that the defendant had been drinking then, Gardner added that the defendant had appeared in control and not intoxicated. Furthermore, an officer who had seen the defendant approximately two to three hours after the offense indicated that the defendant had not appeared intoxicated. For example, the officer stated that he had not detected an odor of alcohol on the defendant, nor had he noticed any slurring of the defendant's speech. Resolving all conflicts in favor of the State, the jury could well have determined that the defendant's ability to take part in an intentional killing had not been negated by voluntary intoxication. See, e.g., State v. Hall, 8 S.W. 3d 593, 600 (Tenn. 1999); State v. Brooks, 909 S.W.2d 854, 859 (Tenn. Crim. App. 1995).

The record also indicates that the jurors asked the trial court two questions during their deliberations. Essentially, the jury asked 1) whether the law required an "intent to shoot or an intent to kill"; and 2) whether the law would hold a person responsible for the consequences of an act though the person did not desire the specific outcome "if a reasonable person should have known his or her actions could produce those results." To these inquiries the trial court provided written

_____

[5] Gardner recounted that the defendant had said, "[G]et them hooks" prior to the shooting. This witness explained that the statement meant "do something to" Vice Lords. Furthermore, White indicated that "LMG" stood for the neighborhood known as "Lemoyne Garden"; thus, she explained "LMGK" referred to killing those who are from that neighborhood.

responses reflecting the state of the law. From our review the questions signify the jury's thoughtful analysis of the facts, and their verdict demonstrates that they rejected alternative theories to that of the defendant's guilt of first degree murder.

Briefly addressing the remaining points urged by the defendant on this issue, we remain unpersuaded. The record reflects little proof of a heated exchange preceding the shots but rather provides more than one statement indicating that the members of the victim's group were walking away from and ignoring the defendant's incendiary comments. Furthermore, the testimony regarding whether the weapon was pointed in the air is open to interpretation, and even if the defendant had originally pointed the weapon up in the air, he obviously later lowered it, firing into a group of young people; otherwise the victim would not be dead. Resolving all conflicts in favor of the prosecution, we find ample support for the conclusion that the defendant announced himself as a killer; went to another car, obtained a weapon therefrom; and then fired multiple times killing the victim with one of these shots. These facts support a finding of intent to kill. This issue lacks merit.

### Excluding the Defendant from the Courtroom

The defendant next avers that the trial court erred in barring him from the courtroom for his repeated interruptions during the trial. Rule 43 of the Tennessee Rules of Criminal Procedure, entitled "Presence of the Defendant" provides, in relevant part,

> (a) Presence Required.  Unless excused by the court upon defendant's motion, the defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
> (b) Continued Presence Not Required.  The further progress of the trial to and including the return of the verdict and imposition of sentence shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present:
> (1) voluntarily is absent after the trial has commenced (whether or not he or she has been informed by the court of the obligation to remain during the trial), or
> (2) after being warned by the court that disruptive conduct will cause the defendant to be removed from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.  If a trial proceeds in the voluntary absence of the defendant or after the defendant's removal from the courtroom, he or she must be represented in court by competent counsel;  and, if the defendant has been removed from the courtroom, he or she shall be given reasonable opportunity to communicate with counsel during the trial.  If a trial is proceeding with the defendant excluded from the courtroom because of disruptive conduct, the court shall periodically determine at reasonable intervals whether the defendant will then signify willingness to avoid creating a disturbance if allowed to return to the courtroom and shall permit such return when the defendant so signifies and the court reasonably believes the defendant.

Tenn. R. Crim. P. 43.

Prior to causing the disturbances, the defendant expressed dissatisfaction with his representation and sought a continuance on the morning of jury selection. When the continuance was denied, the defendant made spontaneous proclamations to the jurors on multiple occasions regarding the unfair nature of his trial.

In his first series of statements made before the initial witness had been called, the defendant exclaimed: "The Court's forcing me to go to trial. My attorneys are against me. . . . They haven't even contacted my witnesses. . . . I'm not ready to go to trial." Thereafter the trial court had the jury removed from the courtroom and told the defendant that he could not continue to talk to the jurors. The trial judge added that if the defendant persisted, the judge would remove him from the proceeding or have him bound and gagged.[6] After the defendant indicated that he understood and after he stated, "That's all I had to say," the jurors were allowed to return to the courtroom. The trial court apologized to them for the disruption, gave an overview of courtroom procedure regarding speaking in court, and inquired whether they could disregard the outburst. All affirmed that they could still fairly try the case.

Nevertheless, minutes later, the defendant again began making comments about his counsel's alleged failure to contact witnesses and the trial court's forcing him to trial though he was not prepared. In addition, the defendant announced, "My attorneys [sic] out to railroad me." The trial court once more had the jury removed from the courtroom; had a discussion with the defendant and the attorneys; and received assurances from the defendant that he would not create a further disturbance. Prior to allowing the jury to return, the trial court cautioned the defendant using indisputably clear language. For example, the trial court stated:

> But you understand that if you make another outburst, you have waived your right to be in court, you will be ejected, and if you choose to testify in this case, I will bring you back in for your testimony but I will not allow you to come back into this trial tomorrow or the next day . . . if you make another outburst, you have waived your right to appear for the entire trial. . . . you can't say another word in this trial while this jury's in the courtroom without my permission. If you do, you've forfeited your right to be in here on your trial.[7]

The jurors returned; were instructed by the judge that these acts could not be considered relevant to the State's case; and again indicated that they could fairly try the defendant.

The trial proceeded, and numerous State witnesses testified. During more than one break while the jury was not present, the trial court thanked the defendant for his good behavior and repeated the consequences to be imposed if he chose to create another disturbance. On one of these occasions, the defendant learned that Eric and Derrick Lewis were present. In seeking his continuance, the defendant had complained that trial counsel had failed to prepare and call these

---

[6] Even before this first outburst, the trial court had heard that the defendant might be planning to cause some form of trouble; thus, the court had cautioned the defendant that if he did not follow procedure, he would forfeit his "right to remain in the courtroom."

[7] Exclusion for the entire trial at that point may have been too severe in view of the aforementioned provisions of Rule 43(b)(2) and the fact that the first witness had yet to testify when the court issued this warning. However, we need not rule on this matter as the exclusion occurred considerably later in the proceeding.

individuals and another witness for trial.[8]  When the jurors returned, the defendant announced to them: "They're trying to railroad me. You don't know what's going on back there. They haven't prepared no defense for me in my behalf. I'm not ready to proceed to trial. They [sic] trying to railroad me for real."

The trial court had the jury step out of the courtroom and then found that the defendant had waived his right to be present at trial. While announcing its findings, the trial court stated:

> This Court finds for the record that [the defendant] has forfeited his right to remain in this trial. [The defendant] has a constitutional right to confront his witnesses. He does not have a right to disrupt these proceedings and make demonstrations in front of this jury. This Court also finds that he waited until all of the jury was in here . . . and he purposefully, willfully tried to disrupt these proceedings. Therefore, I find as a matter of fact that [the defendant], knowing what would happen, has freely and voluntarily waived his right to be present at his trial and I'm excluding him from the courtroom.[9]

Thereafter, defense counsel moved for a mistrial, but the trial court did not grant this request.  The jury returned, and the trial court briefly explained what had transpired and that none of these occurrences were to reflect on the defendant's guilt or innocence for the charged crime. Finally, the trial judge polled each member of the jury concerning whether he or she could "give the State and the defendant in this case a fair trial." All asserted that they could.

Though excluded from the courtroom, the defendant was placed in a room nearby where counsel could confer with him during breaks.  Moreover, the trial judge allowed the defendant to return at the beginning of the sentencing phase of this proceeding.  In all, four witnesses testified in the defendant's absence: a crime scene unit officer, the medical examiner, a defense witness, and an officer briefly called in rebuttal concerning the matter of intoxication.

To support his argument, the defendant cites State v. Cole, 629 S.W.2d 915 (Tenn. Crim. App. 1975) for the proposition that the outburst must be violent and/or threatening to overcome an accused's constitutional right to be present during his or her trial.  However, our review reveals no such requirement nor would logic demand this. A defendant may not be allowed to continue speaking with the jury at will, thereby impeding the orderly conduct of the trial.

In the instant case the defendant received multiple warnings. He stated that he understood the ramifications of his continuing to engage in the disruptive behavior. When given the choice between being bound and gagged or being removed from the courtroom as an impending penalty should he persist, the defendant stated that his preference would be removal from the courtroom.

---

[8] Chris Lewis was the third desired witness who was not present. However, in spite of above-referenced testimony indicating that he had been present when the crime occurred, this individual had given a statement to the police denying that he had seen anything relative to this offense. The value of his potential testimony is, therefore, questionable.

[9] The trial court also noted for the record its belief that the defendant's latest outburst had occurred upon learning that the allegedly desired witnesses, previously mentioned as a reason for needing a continuance, were present. The court further opined that since these individuals could no longer be used as a proposed ground for delaying the trial, the defendant then attempted to force delay through "deliberately trying to ask for a mistrial."

The trial court gave him an adequate opportunity to comply, and by his actions the defendant forfeited his right to be present for the portion of his trial from which he was excluded. There has been no finding that he was not competently represented by both of his appointed attorneys. These individuals were able to confer with him during breaks in the trial. In fact, the court allowed the defendant to return to the courtroom on some occasions when matters were being discussed but the jury was not present. Furthermore, we have noted that the trial court permitted the defendant to return during the entire sentencing portion of the proceeding.[10] We understand the trial court's hesitancy in allowing the defendant to return earlier in view of the defendant's previous failure to keep his word after promising not to cause further disturbances. Under these circumstances we find that the trial court has complied with the aforementioned Tennessee Rule of Criminal Procedure 43(b). See, e.g., State v. Ballard, 21 S.W.3d 258, 261-62 (Tenn. Crim. App. 2000) (recognizing that a defendant may be removed from a courtroom pursuant to the requirements of Tennessee Rule of Criminal Procedure 43(b)(2)). This issue, therefore, lacks merit.

## Denial of Mistrial Following Exclusion From Court

Relatedly, the defendant asserts that once the trial court removed him, "it was incumbent upon the Court to grant a mistrial due to the obvious prejudice to" him. According to established precedent, the purpose of a mistrial is to correct the damage done to the judicial process when some event has occurred that would preclude an impartial verdict. Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). The decision whether to grant a mistrial is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991).

Our review leads us to conclude that no "manifest necessity requiring" a mistrial presented itself here. The trial court swiftly took action to remove the jurors when the defendant began each of his outbursts. More importantly, the trial court instructed the jury that these incidents were not to be considered with respect to the defendant's guilt or innocence, and the court polled the jurors after each to ensure that the individuals could still afford the defendant a fair trial. As above-noted, the jurors affirmed each time that they could do so. In this situation the trial court did not abuse its discretion by denying the defendant's motion for a mistrial; thus, this issue lacks merit.

## Admission of Letters

The defendant further complains that the trial court erred in allowing the State to admit three letters written by the defendant to Gardner. According to the defendant, the trial court did not conduct a proper hearing concerning relevancy prior to admitting the letters. Additionally, the defendant asserts that the unfair prejudicial effect of these documents outweighed their probative

---

[10] Since this was tried as a capital case, the jury was obviously present during sentencing.

value. To support this claim, the defendant points to the letters' mention of threats against witnesses and of gang activity. The defendant also alleges that the prosecution compounded the impact of the error by repeatedly referring to the letters in closing argument.

When dealing with the admission of evidence, the proposed proof must satisfy the threshold determination of relevancy mandated by Tennessee Rule of Evidence 401. This rule defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 403 adds that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. And finally, Rule 404 deals with alleged "character evidence." Subsection (b) of this rule provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). However, the same subsection further sets out that such evidence may be allowed "for other purposes" if the following conditions are met prior to admission of this type of proof:

(1) The court upon request must hold a hearing outside the jury's presence;
(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). Providing further clarification concerning the second requirement, both the Advisory Commission Comment to this rule and case law state that the above-mentioned "other purposes" include issues such as motive, intent, etc. See, e.g., State v. Parton, 694 S.W.2d 299, 302 (Tenn. 1985); Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980); State v. Jones, 15 S.W.3d 880, 894 (Tenn. Crim. App. 1999). Should a review of the record indicate that the trial court substantially complied with the requirements of Rule 404(b), the trial court's admission of the challenged evidence will remain undisturbed absent a showing that it abused its discretion in admitting this evidence. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

As aforementioned, the contested evidence in the instant case involved three letters sent by the defendant to Gardner. Through two of these the defendant implored Gardner to prevent Fleming, White, and Lori Smith from testifying at the defendant's trial. For example, the defendant instructed Gardner to "[s]care them [sic] girls and threatened [sic] them so they wont [sic] show up in court"; "[t]hem [sic] females got to go man ... take care of them [sic] females"; "[t]hreaten them but dont [sic] let them no [sic] who you is [sic] ... do what you got to do"; etc. The second of these letters also included proposed testimony for defense witnesses and brief mention of a gang. As an illustration of the former, the "P.S." portion of this letter contained the following suggestion: "You can say, Both [sic] of us shot[.] I shot first and You [sic] shot second then that will confuse the court when you say you shot." Finally, in the third letter we find the defendant providing statements for Gardner, Henry Campbell, Derrick Lewis, Eric Lewis, Johnny Martin, and Chris Lewis. The defendant instructed

Gardner to state that he "saw a guy pull up his shirt and reaching for his gun. [The defendant] went beside Chris [sic] car why [sic] he was Intoxicated [sic] And [sic] Henry Campbell gave him a gun. [The defendant] fire [sic] a shot and broke out running." Chris Lewis and Henry Campbell's statements were to be similar to Gardner's; however, Campbell was to also explain that Campbell had given the defendant a gun "because I Felt [sic] like his life was in danger." Thereafter in the letter the defendant added: "The guys was [sic] saying threatening remarks to [the defendant] and saying they was [sic] gon [sic] to kill him. If the lawyer asks who they Is [sic], name some <u>dude</u> names." Finally, according to the letter Eric Lewis and Johnny Martin were both to relate that "They threaten [sic] to kill [the defendant] and to do bodily harm against him. Prior to the incident that happen [sic], They [sic] witness [sic] and heard victims & associations [sic] discussing to do [the defendant] bodily harm."

At trial before the State called its first witness, the lower court conducted a jury-out hearing concerning all three letters. During this hearing the defendant originally argued that the letters were irrelevant then noted that the letters may prove a separate offense. In ruling on the matter, the trial judge looked to <u>State v. Maddox</u> for guidance. See <u>State v. Maddox</u>, 957 S.W.2d 547 (Tenn. Crim. App. 1997). Based upon the content of these letters, the trial court found that therein the defendant had 1) admitted to shooting; 2) tried "to fabricate testimony"; 3) acknowledged "that he was fixing to get into it" before the event, thereby reflecting premeditation; 4) evidenced a desire to threaten witnesses in order to prevent them from testifying; and 5) provided scripts from which certain witnesses were to testify.[11] Within his ruling the trial judge also found that the letters were not unfairly prejudicial and were probative. Concerning the references to a gang, the trial court announced that these would have to be deleted unless testimony made them relevant. As the trial progressed, the court determined that their relevance had been shown and that the references were not unfairly prejudicial. The court, thus, concluded that the letters did not have to be redacted.

Our analysis of this issue begins with the defendant's allegation that the trial court did not conduct an appropriate hearing concerning the letters' relevancy. We agree with the lower court's determination that the letters met the relevancy requirements of Rule 401 in several respects. See Tenn. R. Evid. 401.

The defendant has also failed to persuade this Court that the trial court committed error in determining that the risk of unfair prejudice outweighed the probative value of this proof. As aforementioned, the lower court relied heavily on <u>State v. Maddox</u> in making its decision to admit the letters. <u>Maddox</u> presented a situation in which the defendant Maddox[12] had arguably threatened a witness through a letter. <u>Maddox</u>, 547 S.W.2d at 552. However, this letter also made an unclear reference to an unresolved charge and discussed a plan to rob a Dunkin Donuts. <u>Id.</u> Among other things a second letter also mentioned "the doughnut place." <u>Id.</u> The planned robbery was particularly problematic since it involved the same type of offense for which the defendant was being tried. <u>Id.</u> Moreover, the lower court in <u>Maddox</u> did not conduct the necessary 404(b) hearing as above-outlined. <u>See id.</u>; Tenn. R. Evid. 404(b). Based upon these and other errors, this Court reversed

---

[11] The trial court observed, however, that the jury could make the decision whether the scripts were actually false accounts of what had transpired.

[12] Maddox had a co-defendant, Nolan G. Pankey, in this case. <u>See Maddox</u>, 957 S.W.2d at 547.

Maddox's conviction.[13] See Maddox, 957 S.W.2d at 553, 556-57. However, for our purposes it is important to note that the Maddox Court specifically addressed the threatening portions of the letter and found them admissible and relevant under the guidelines of Rule 404(b). See id. at 551-52. To support this conclusion, the Court cited precedent providing that "[a]ny attempt by an accused to conceal or destroy evidence, including an attempt to suppress the testimony of a witness, is relevant as a circumstance from which guilt of the accused may be inferred." Maddox at 552 (quoting Tillery v. State, 565 S.W.2d 509, 511 (Tenn. Crim. App. 1978); see also State v. Alfonzo Williams, No. W2001-00452-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 234, at *11 (Tenn. Crim. App. at Jackson, Mar. 15, 2002) app. for perm. to appeal filed (Tenn. May 14, 2002). Based upon this rationale, the threatening portions of the letters were appropriately admitted as inferences of guilt. Moreover, in its findings the trial court specifically noted that the danger of unfair prejudice did not outweigh the probative impact of this evidence. We find that the defendant has failed to show an abuse of discretion in the trial court's decision to allow this proof. See State v. Donald K. Moore, No. 01C01-9801-CR-00032, 1999 Tenn. Crim. App. LEXIS 361, at *22-*26 (Tenn. Crim. App. at Nashville, Apr. 20, 1999).

We further note that the defendant's challenge to the gang related evidence likewise fails. Before these letters were admitted, two witnesses had testified, without objection, that someone had stated "LMGK" ("Lemoyne Garden Killer") and "VLK" ("Vice Lord Killer") immediately prior to the shots' being fired. As such, it is arguable that the defendant waived a challenge to this type of proof. See Tenn. R. App. P. 36(a). However, even if this issue were not waived, testimony concerning gangs is permissible in trials wherein the proof meets the requirements of the aforementioned Tennessee Rules of Evidence 401, 403, and 404. See State v. G'Dongalay Parlo Berry, No. M1999-00824-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 847, at *35-*39 (Tenn. Crim. App. at Nashville, Oct. 19, 2001), perm. to appeal denied (Tenn. Mar. 4, 2002); State v. Johnie Jefferson, No. W1999-00747-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 827, at *27-*30 (Tenn. Crim. App. at Jackson, Oct. 12, 2001), app. to perm. to appeal filed (Tenn. Nov. 7, 2001). The brief references within the letters to a gang were arguably relevant to motive under the facts presented, and the probative value of this evidence was not outweighed by the danger of unfair prejudice.

Lastly, the defendant complains "that the State . . . compounded the error by making repeated reference to the letters during closing argument and discussing [them] as evidence of gang action and other crimes." In view of our above findings, we determine that the State could properly mention the content of these letters in closing to argue the inference of guilt, presence of motive, etc. However, even if some of the prosecution's comments had been improper, the defendant raised no contemporaneous objection at any time during closing. We, therefore, find that this portion of the issue has been waived. See Tenn. R. App. P. 36(a); see also State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992).

In sum, we find none of the defendant's contentions relative to the admission of the letters worthy of relief. This issue, thus, lacks merit.

---

[13] The Court, nevertheless, affirmed the conviction of Maddox's co-defendant. See id. at 557.

## Improper Closing Argument

Through his final complaint the defendant avers that the prosecution improperly commented in closing on a witness mentioned by the defense in its opening statement but not called during trial. The defendant's attack is somewhat unclear but appears to be that the State "essentially shift[ed] the burden" of proof to the defendant. To bolster this claim, the defense cites cases concerning comments on a defendant's choice not to testify and cases regarding a party's mention of "an absent witness."

Factually, the record discloses that the defense announced the following during its opening statement: "Now, you will hear testimony, I believe, from Tiffany White and Lori Smith . . . . Lori Smith will testify, I believe, that several people were armed and several fired weapons." In response on closing, the prosecution stated as follows:

> The judge is going to instruct you in a few minutes what the law is in this case. You've heard the evidence from the witness stand. The evidence is what and who you heard from. Evidence is not who didn't testify. . . . Mr. Nance got up and said the proof is going to show you that at least one of the witnesses identified four people with guns. Everybody had guns. I don't think we heard that. You're the triers of fact but I don't think any witnesses got on the stand and said that. I think he said that Ms. Lori Smith was going to say that. I don't think she testified. But you use your own memories.

During its second closing argument, the State added:

> And, you know, opening statements are where you stand up and you say, ["L]adies and gentlemen, we expect the proof the show this["] and you go through it. But you better make sure what you say is going to happen or it's going to come back to haunt you. Isn't it? If I got up and said it and it didn't happen, [the defense attorneys] would be the first one[s] ringing the bell. ["The prosecutor] promised you this. Where was it?["]
>
> What did they promise? ["]Well, we expect you'll hear from a witness named Lori Smith who's going to say there were four people out there shooting guns.["] . . . They wanted you to think that somebody was going to come in here and say, ["]I saw four different people shooting and it was chaos[. I]t was the OK Corral.["] But what did you hear? Every single eye witness said [the defendant] was the only person shooting.

At no point did the defense object to these comments. In view of this, we find that the defendant has waived this issue. See Tenn. R. App. P. 36(a); Little, 854 S.W.2d at 651. However, even if not waived, this allegation would not merit reversal.

The logical inference drawn from these remarks is that the prosecution wished to highlight the fact that a defense theory involving other shooters had never manifested itself in proof not that the defendant did not testify. Though the defense has no duty to put on proof, it had placed this account before the jurors in its opening statement. Furthermore, even assuming arguendo that the

prosecutor's comment could be considered as some vague reference to the defendant's electing not to take the stand, the trial court clearly later instructed the jury that:

> The defendant has not taken the stand to testify as a witness but you shall place no significance on this fact. The defendant is presumed innocent and the burden is on the state to prove the defendant's guilt beyond a reasonable doubt. The defendant is not required to take the stand in his own behalf and his election not to do so cannot be considered for any purpose against him, nor can any inference be drawn from such fact.

The law presumes that juries follow the instructions they receive absent clear and convincing proof to the contrary. See State v. Vanzant, 659 S.W.2d 816, 819 (Tenn. Crim. App. 1983). Under all of these circumstances we see no basis for reversal. See, e.g., State v. Copeland, 983 S.W.2d 703, 708-09 (Tenn. Crim. App. 1998).

We next address the defendant's contention that the trial judge improperly permitted the State to present a missing witness argument during its closing. It is well settled that, "[a]s a predicate for comment on a missing witness, the evidence must show that the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for the trial." Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979).

Applying this standard to the instant case, we determine that Lori Smith would not have qualified as a missing witness. Though the defense itself argued that the witness had knowledge of material facts, no showing was made of the latter two criteria. Nevertheless, the trial court's instructions to the jury clearly provided that the State must bear the burden of proving each element beyond a reasonable doubt and also delineated between what constituted evidence and what was merely argument. In view of this and considerations such as the strength of the case against the defendant, even if error these statements are harmless. See, e.g., State v. Jack Thomas Norris, No. 03C01-9704-CR-00137, 1999 Tenn. Crim. App. LEXIS 330, at *16-*19 (Tenn. Crim. App. at Knoxville, Apr. 9, 1999), perm. to appeal denied (Tenn. Oct. 25, 1999); Judge v. State, 539 S.W.2d 340, 344-46 (Tenn. Crim. App. 1976).

In sum, we find that the defendant waived this issue as a whole by failing to make a contemporaneous objection to the statements during the prosecution's closing argument. However, even if not waived, we conclude that the rationales presented provide no basis for relief.

## Conclusion

For the foregoing reasons we find that none of the issues raised merit reversal. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE