# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 15, 2003 Session

## STATE OF TENNESSEE  v.  DAVID KYLE GILLEY

**Interlocutory Appeal from the Circuit Court for Rutherford County**
**No. F-52137     Don Ash, Judge**

---

**No. M2003-00499-CCA-R9-CD - Filed February 26, 2004**

---

Pursuant to Rule 9, Tennessee Rules of Appellate Procedure, both the defendant and the State were granted appeals from an interlocutory order of the trial court granting in part, and denying in part, Defendant's motion to exclude Rule 404(b), Tennessee Rules of Evidence, testimony.  After a careful review of the evidence, we affirm in part and reverse in part the trial court's order.

**Tenn. R. App. P. 9 Appeal; Judgment of the Trial Court Affirmed in part,**
**Reversed in part, and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Alfred H. Knight and Roger T. May, Nashville, Tennessee, for the appellant, David Kyle Gilley.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and J. Paul Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On March 4, 2002, the Rutherford County Grand Jury returned an indictment charging Defendant, David Kyle Gilley, with the premeditated first degree murder of Laura Salmon.  The indictment alleges that the homicide occurred almost eighteen years prior, on May 31, 1984. Defendant was a juvenile on May 31, 1984, and prior to the filing of the indictment, Defendant had been charged in Juvenile Court on November 16, 2001, and was subsequently transferred to be tried as an adult.

The record in this interlocutory appeal reflects that Defendant and the victim dated, at least off and on, for a period of time prior to the victim's death.  They had a tumultuous relationship.

In the record presently on appeal, the first document filed after the indictment is styled "State's Written Notice of Potential [Tenn. R. Evid.] 404[(b)] Material," which was filed on September 12, 2002. On October 16, 2002, Defendant filed a motion *in limine* requesting the trial court to order the State to refrain from mentioning during trial, and from eliciting testimony from any witnesses, the proposed proof summarized in the State's "written notice."

Two important observations need to be noted at this point. First, it can be surmised from the record that Defendant's theory of defense is that someone other than he killed the victim, but since the case has not yet been tried, other defenses and/or theories of guilt of lesser-included offenses are not precluded at this time. Secondly, the State was not required to file its written notice of proposed Rule 404(b) evidence prior to trial, and the procedure followed by the State is therefore somewhat unusual.

Following a two-day hearing, the trial court granted in part and denied in part Defendant's motion. In another somewhat unordinary procedure, the State and Defendant filed a joint motion with the trial court for permission to appeal the trial court's order pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The trial court granted the motion, and this Court subsequently granted both the State's and Defendant's applications to appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

In its application to appeal the trial court's interlocutory order, and in its brief on appeal, the State contests only that portion of the order which granted in part Defendant's motion because the testimony of certain witnesses was cumulative. The State attacks this ruling on two grounds: (1) the State, not the trial court, should be allowed to prioritize the proof and determine which witnesses, and in what order, should be called to testify, and (2) the trial court improperly characterized "many of the incidents" as cumulative. In his application and brief on appeal, Defendant argues that the trial court's order should be reversed in all portions wherein it allows the State to introduce evidence pursuant to Tennessee Rule of Evidence 404(b).

**Proposed Tenn. R. Evid. 404(b) Material**

In its notice, the State listed twenty-four witnesses. However, the trial court's order addresses only fourteen of those witnesses. The record does not reflect why the trial court did not rule on the remaining witnesses, or if the State withdrew the remaining witnesses from its list of potential 404(b) testimony. We will therefore address only the testimony of witnesses addressed in the trial court's order.

In order to logically and clearly address the issues raised, it is necessary to quote verbatim, where relevant, the State's notice of potential Rule 404(b) evidence, and in bold print, state the trial court's findings and ruling as to the proposed witnesses:

1. **Lourene Mackey**, mother of Laura Salmon. As a teacher at Oakland High School she saw Kyle assaulting Laura in the hallway one day during her

senior year '82-'83 and caused him to be taken to the office. On another occasion in the summer of '83, she found Laura crying at home as a result of an assault by Kyle Gilley which resulted in her two front teeth being broken off. Dental records of this incident are available, and state the injuries were caused due to a severe blow to the teeth and jaws. Ms. Mackey was aware of a number of other assaults and attempted to get Laura, by then 18, to prosecute Kyle for an assault at her MTSU dormitory in March 1984. Laura would not prosecute him.

**With regard to the testimony provided by Witness Lourene Mackey, the Court finds that her observations of the victim after the defendant allegedly pushed her into the lockers at Oakland High School are admissible to prove the defendant's motive, intent and a settled purpose to harm the victim. The victim's statements made to Witness Mackey immediately following the incident are also admissible under the excited utterance exception to the hearsay rule. The Court finds clear and convincing evidence that these events occurred as described and the probative value of the evidence outweighs the prejudicial effect.**

**The Court will also allow Witness Mackey's statements about her observations of the victim's mouth injury. The Court will allow the victim's statement made to Witness Mackey immediately following the injury to her mouth, explaining that she fell while horsing around with the defendant. This statement is admissible as an excited utterance. There is clear and convincing evidence that these events occurred as described and the probative value of the evidence outweighs the prejudicial effect.**

**The Court will not allow the victim's statement made the day after injuring her mouth, which accused the defendant of causing the injury which fails to qualify as an excited utterance exception to the hearsay rule.**

2. **Kim Roberts** said she was present on numerous occasions when Kyle slapped, shoved and hit Laura. In particular she said she was present when Kyle assaulted Laura at her MTSU dormitory in March 1984.

**In regards to the testimony provided by Witness Kim Roberts, the Court finds that the testimony describing an incident where the Defendant allegedly drug the victim down a stairwell at MTSU is admissible to show the defendant's hostility toward the victim, malice, intent or a settled purpose to harm. There is clear and convincing evidence that the event occurred as described and the probative value of**

**the evidence outweighs the prejudicial effect. The Court reserves ruling on the statements of fear made by the victim to Witness Roberts.**

3.    **Read [sic] Ridley** said he was present at The Murfreesboro Little Theatre on an  occasion when Kyle assaulted Laura, then rolled her arm up in the window of the car he was driving and drag [sic] her through the parking lot.

      **The Court finds that in the testimony of Reed Ridley there is a material issue that goes to the relationship of the parties, intent and motive and that there is clear and convincing evidence that the event took place. The Court finds that the prejudicial effect of Witness Riley [sic] testimony outweighs its probative value. Therefore, this testimony is not admissible, in that the Court finds it is cumulative.**

4.    **Trina Quesenberry. [No ruling on this testimony was included in the trial court's order.]**

5.    **Connie Shelton** said she witnessed an assault on Laura at the "Party Tree" off Sulphur Springs Road.  Kyle showed up at a band/flag corps field party and insisted Laura leave with him.  When she refused, Shelton said, Kyle grabbed Laura by the back of the neck and hair and threw her face first onto the hood of the car.  Shelton said that resulted in Laura having two black eyes.  Shelton also saw other assaults in which he pushed and shoved Laura. Laura told Shelton she was afraid to leave Kyle, that he was into rough sex and he wasn't a loving person.  Shelton said Kyle would follow Laura, leave notes and flowers and was very jealous.

      **The Court will allow Witness Connie Shelton's testimony describing an event where she allegedly observed Defendant pull the victim's hair and ram  her into a car a couple of times as admissible 404b evidence. The Court finds that this testimony is relevant to a material issue to prove the relationship of the parties, the defendant's hostility toward the victims [sic], showing malice, intent, or a settled purpose to harm. The Court finds that the Witness' testimony provided clear and convincing evidence that the event took place as the Witness described. The Court finds that the probative value of this testimony outweighs the prejudicial effect. Further the Court ruled that the issue of the remote nature of the event described goes only to the weight and not the admissibility of the evidence under the holding of <u>State v. Pleasant</u>, 2001 Tenn. Crim. App. Lexis 486 (July 3, 2001).**

**The Court will not allow testimony from Witness Shelton describing certain notes written by the Defendant to the victim at this time, but will reserve ruling until a future hearing.**

6. **Melinda Edwards** said she knew Laura from childhood. She witnessed the black eyes from Kyle slamming her face first into school lockers. She also witnessed the "Party Tree" incident in which he slammed her face into the car. During the spring of '83, Edwards said Laura had broken up with Kyle and she witnessed Kyle confront her in the school hallway at Oakland. Kyle grabbed Laura's arm twisted it up behind her back and said "I'll KILL YOU before I let you go out with someone else." Edwards said Laura told her she was afraid to leave Kyle and would have to stay with him.

**The Court will allow Witness Melinda Edwards' testimony describing an event that took place in the hallway of Oakland High School where defendant allegedly shoved the victim into the lockers as evidence of the violent acts indicating the relationship between the victim of a violent crime and the defendant prior to the commission of the offense. The Court finds this evidence is relevant and admissible to show the defendant's hostility towards the victim, malice, intent and settled purpose to harm the victim. This evidence is not relevant to show the defendant's propensity to commit the crime.**

**The Court will allow Witness Edwards' testimony describing the same event as Witness Shelton where Defendant allegedly grabbed the victim by the hair and knocked her head into the car as admissible to show defendant's hostility towards the victim; malice, intent and settled purpose to harm the victim. The Court finds that Witness Edwards provided clear and convincing evidence that the events took place as described and that the probative value of this testimony outweighed the prejudicial effect. The Court finds that Witness Edwards' testimony describing an alleged threat made by Defendant to the victim telling her if she dated anyone else, he would kill her is admissible testimony but not 404b material.**

**The Court reserves ruling on Witness Edwards' testimony regarding the victim's statements to the Witness that the victim was afraid of the Defendant, under the ruling in State v. Smith, 868 S.W.2d 561. (Tenn. 1993)**

**The Court finds that Witness Edwards' testimony describing the victim's various bruises and the victim's injury which required her to wear her arm in a sling to be inadmissable for lack of clear and**

**convincing evidence of these events or statements occurring as the victim described them.**

7.      **John Jolly** said he and Brian Chastain saw Kyle yelling, screaming and shoving Laura in a driveway of [sic] about a month before the murder. Kyle then grabbed her by the neck and shook her back and forth.

      **The Court finds that in the testimony of Witness John Jolly there is a material issue that goes to the relationship of the parties, intent and motive and that there is clear and convincing evidence that the event took place. The Court finds that the prejudicial effect of Witness Jolly's testimony outweighs its probative value, in that the Court finds it is cumulative. Therefore, this testimony is not admissible.**

8.      **Phil Hull. [No ruling on this testimony was included in the trial court's order.]**

9.      **Scott Mason** said he'd seen Kyle shaking and grabbing Laura in the halls of Oakland on more than one occasion. He said that one day he passed the couple on his way into a classroom and then heard a slap, he turned around and Laura was crying and Kyle was walking away.

      **The Court finds that the testimony of Witness Scott Mason does present a material issue because it shows the relationship of the parties but is inadmissable 404b material for lack of clear and convincing evidence the Defendant actually slapped the victim as described by Witness Mason. The Court finds that the prejudicial effect of Witness Mason's testimony outweighs its probative value, in that the Court finds it is cumulative.**

10.     **Bill Tenpenny**, Murfreesboro police officer, said he was at a dance at Oakland and saw Laura come running out crying and the side of her face was red. Tenpenny said Laura told him that Kyle had just slapped her. Tenpenny said he and now-Murfreesboro firefighter Darrell Alexander witnessed Gilley get into a violent fight in Smryna in which he held a boy down and pummeled his face bloody.

      **The Court finds that the testimony of Witness Bill Tennpenny shows a material issue that goes to motive or intent and there may be clear and convincing evidence that the Defendant actually slapped the victim as described by Witness Tennpenny. The Court, however, based upon the introduction of the other testimony also finds that the prejudicial effect of Witness Tennpenny's testimony outweighs its**

**probative value. Therefore, this testimony is not admissible, in that the Courts finds it is cumulative.**

11.   **Darrell Alexander. [No ruling on this testimony was included in the trial court's order.]**

12.   **Michelle Clark. [No ruling on this testimony was included in the trial court's order.]**

13.   **Terri McCrary** and **Mike Arrington** arrived at a school dance at Oakland and observed Kyle slamming Laura face-first into a car while holding her neck and hair. Arrington had to separate them. **[No ruling on the testimony of Mike Arrington was included in the trial court's order.]**

The Court finds that the testimony of Witness Terri Brown McCrary describing an event where she allegedly witnessed the Defendant pull the victim's hair and hit her head against the car is admissible for the purpose of showing violent acts indicating the relationship between the victim of a violent crime and the defendant prior to the commission of the offense which is relevant to show the defendant's hostility towards the victim, malice, intent and a settled purpose to harm the victim. There is clear and convincing evidence that the event occurred as described and the probative value of the evidence outweighs the prejudicial effect. The Court also finds that the statements made by the victim during this event are admissible under the mental state exception to the hearsay rule.

The Court reserves ruling on the admissibility of testimony describing an incident where Witness McCrary allegedly witnessed the Defendant argue with the victim behind the bleachers at a football game.

14.   **Mary Lester** went to high school with Laura and was in flag [corps] with her. While in high school she frequently saw bruising on Laura and witnessed verbal aruguments [sic]. While she and Laura attended a band camp at MTSU in the summer of '83, she saw Kyle driving by slowly and repeatedly as the flag corps practiced. She said Laura became irate and screamed at Kyle to leave her alone. Laura told her Kyle had been following her. Kyle only left when the band director threatened to call police.

**The Court finds that Witness Mary Lester's testimony which describes an event where she and the victim were practicing for flag corp try-outs and the Defendant while driving in his car watched the victim is admissible evidence relevant to the Defendant's motive or intent and**

the violent relationship between the Defendant and the victim. There is clear and convincing evidence that the event occurred as described and the probative value of the evidence outweighs the prejudicial effect. The Court also finds that the statements made by the victim during this event are admissible under the excited utterances exception to the hearsay rule.

The Court further finds that the incident involving the defendant allegedly twisting the victim's arms may be testified to by Ms. Lester as it is admissible evidence relevant to the Defendant's motive or intent and the violent relationship between the Defendant and the victim.

14. **Clay Shearron. [No ruling on this testimony was included in the trial court's order.]**

15. **Shelly Davenport Tedrow** said she went with Kyle to have consensual sex at a remote location in the summer of '84. It was her first sexual intercourse [with Kyle] and she said that Kyle became increasingly violent and she asked him to stop. He told her to cooperate or she would "end up like Laura Salmon." Ms. Tedrow had never heard of Laura and asked him who she was. "My girlfriend," Kyle said. Ms. Tedrow asked what happened to her and he said "she's dead." Ms. Tedrow asked how she died and he said, I killed her. Tedrow said she was afraid she was going to be killed and allowed Kyle to finish having sex with her. She showed Detectives Goodwin and Sharp where this assault occurred and it was less than 20 yards from where Laura Salmon's body was found.

Witness Shirley Davenport Tedrow's testimony concerning the Defendant's alleged admission against interest found at page 259, line 7 of the transcript from the transfer hearing is not 404b material and the Court shall reserve ruling on this evidence at a later time. Witness Tedrow's testimony describing the nature of her encounter with the Defendant allegedly at the Rock Quarry, twenty feet from where the murder victim's body was found is inadmissable as 404b material and found to be highly prejudicial.

17. **Marty Milam** said that he saw Kyle twisting the arm of his then-wife Gina Jordan Gilley while visiting them at the MTSU Married Housing in 1985.

Witness testimony from Marty Milan, Laurie Carr, and Barbara Smith seem to allege signature crimes that can only be admissible if the modus operandi of the other crime and of the crime on trial are substantially identical and so unique that the proof tends to show that

**the defendant committed the crime for which he is charged. The Court finds that the incidents described by these witnesses fail to meet this test and therefore, they are not admissible under *T.R. Evid. 404(b)*.**

18. **Amanda Milam. [No ruling on this testimony was included in the trial court's order.]**

19. **Laurie Carr** said that after Kyle divorced Gina, she began a relationship with him that continued when they both moved to Florida, she to go to college and he to his hometown of Bradenton. She said that when she finally tried to break off the relationship in 1990, he became physically violent, demanding jewelry back and slamming her face-first into a car. Gilley's roommate, Eric Rush, interceded and fought Gilley off her, and the roommate's girlfriend, Diane Lehman had to use Mace to try to separate them. She said she thought Kyle was going to kill her in the driveway.

   **Witness testimony from Marty Milan, Laurie Carr, and Barbara Smith seem to allege signature crimes that can only be admissible if the modus operandi of the other crime and of the crime on trial are substantially identical and so unique that the proof tends to show that the defendant committed the crime for which he is charged. The Court finds that the incidents described by these witnesses fail to meet this test and therefore, they are not admissible under *T.R. Evid. 404(b)*.**

20. **Diane Lehman. [No ruling on this testimony was included in the trial court's order.]**

21. **Otis Joiner. [No ruling on this testimony was included in the trial court's order.]**

22. **Will Hinkle. [No ruling on this testimony was included in the trial court's order.]**

23. **Barbara Smith** said she was stalked by Kyle Gilley after she refused his advances and he broke into her home twice during the middle of the night.

   **Witness testimony from Marty Milan, Laurie Carr, and Barbara Smith seem to allege signature crimes that can only be admissible if the modus operandi of the other crime and of the crime on trial are substantially identical and so unique that the proof tends to show that the defendant committed the crime for which he is charged. The Court finds that the incidents described by these witnesses fail to meet this test and therefore, they are not admissible under *T.R. Evid. 404(b)*.**

**Factual Background**

In order to properly address the issues in this appeal, it is necessary to review the non-Rule 404(b) proof available in the record, because that evidence is relevant to our consideration of whether Rule 404(b) testimony is relevant to a material issue other than a character trait of Defendant. Most of the non-Rule 404(b) proof has been gleaned from the transcript of Defendant's transfer hearing in juvenile court, which was included in the record on appeal.

Defendant and the victim, Laura Salmon, both attended Oakland High School in Murfreesboro and began dating in 1983. The victim graduated in the spring of 1983, and attended Middle Tennessee State University in Murfreesboro during the 1983-84 school year. Defendant graduated from Oakland High School approximately one week prior to the victim's death on May 31, 1984.

The victim's body was found about 35 feet from a gravel road in a rural area of Rutherford County behind Hoover Rock Quarry. The victim was nude except for her bra. Two pairs of blue jeans, one of which was identified as the victim's, were laying over her body. A jacket was tied around the victim's neck, covering her chest. The body was found shortly before 6:00 p.m. She had numerous injuries to her head. There were indications that the killer had hit the victim on the head with numerous rocks. Blood spots in the gravel, abrasions on the victim's back and hip, and blood on the ground indicated that the victim was first assaulted on the gravel road and then dragged to the location where her body was found, and that she was hit with rocks at that location also.

DNA testing of semen found in the victim's vagina, and on a shirt and on her panties at the scene excluded Defendant as the donor of those specimens. However, one of the pairs of blue jeans found partially covering her body was a size 30 x 36, the same size pants as worn by Defendant. These jeans had blood spatter on them which matched the victim's DNA, and they also had a semen deposit on them that matched Defendant's DNA. There was blood spatter evidence that the victim's blood was deposited on these jeans at the time that the victim's assailant was wearing the jeans and while she was being assaulted.

At approximately midnight on May 31, 1984, the victim's car was found in a parking lot near the Kroger grocery store where she was employed. The driver's seat had been adjusted back. Two pairs of shoes were in the car. She was barefooted when found dead, and the bottoms of her feet were dirty. There was dust on the victim's car, which was forensically tested and determined to be consistent with the soil where her body was found.

Gladys June Mears testified that she saw a man who looked like Defendant in a car that looked like the victim's car, at an intersection approximately two miles from where the victim's body was found, at approximately 4:45 p.m. on May 31, 1984. The reason she paid attention to the vehicle and its occupant was that the car was sitting for a long time at the intersection, and she

waited a considerable time for the vehicle to move. Finally, she crossed the intersection and drove past the vehicle. The other vehicle's driver's side window was down, and Ms. Mears got a good look at the driver. As she drove away and nearly out of sight of the other vehicle, she looked in her rearview mirror and observed the vehicle still sitting at the intersection.

Retired T.B.I. Agent Tom Carmouche interviewed Defendant at his attorney's office in September, 1984. Agent Carmouche wrote down what Defendant said, but Defendant refused to sign the statement upon his attorney's advice. Defendant told Agent Carmouche that he had known the victim for about three years, and had dated her for about two years prior to her death. He said that he had gone to Florida following his graduation, and had returned prior to the victim's death. Defendant said he had seen the victim twice upon his return from Florida.

Defendant told Agent Carmouche that he worked a midnight shift on May 30-31, 1984, and got off work at 7:00 a.m. on May 31. He went home and went to bed. He later woke up and either placed or received a phone call and then went back to sleep. Defendant woke up about 4:40 p.m. and tried to call the victim, but did not reach her. Defendant claimed to have made plans to meet the victim at her grandmother's house in Murfreesboro at 4:00 p.m. (When the victim got off work at Kroger at 1:00 p.m. May 31, she told a co-worker that she was going to her grandmother's apartment complex to swim.) Defendant said he called the victim's father and grandmother trying to locate her, and then drove around looking for her. Defendant told Agent Carmouche that he had been to the rock quarry area on two prior occasions but never with the victim. Although not explicitly stated, it is obvious Defendant denied involvement in the victim's death.

In 2000, the case was reopened for investigation. Pursuant to this investigation, Detective Don Goodwin and Detective Sharpe, of the Rutherford County Sheriff's Department, went to Florida and interviewed Defendant at his place of employment at the Manatee County Public Works Office. As an aside, Detective Goodwin testified that he knew the victim at MTSU, where she was his "little sister" in the Sigma Chi fraternity. He had taken the victim to a movie on the Sunday before her death.

Detective Goodwin wrote down what Defendant told him in November, 2001, and Defendant signed the statement. In this statement, Defendant denied that he had ever been to the rock quarry area where the victim's body was found. Defendant told Detective Goodwin that the victim and Defendant had a mostly sexual relationship, but that each also dated other persons, and neither was jealous. He said that he and the victim had sex just about every time they got together. In the statement, Defendant said "I was never physically violent with her, though she'd slap me, and we would scream and holler. One time, she chipped her tooth when she jumped on me." Defendant told Detective Goodwin that on May 31, 1984, he got home from work after he got off at 7:00 a.m. and went to bed. He said he woke up between 5:00 p.m. and 7:00 p.m. and called the victim. Her father told Defendant that she was in some kind of trouble, so Defendant called the Sheriff's Department and asked about the victim.

Shelly Davenport testified that she was a freshman at Oakland High School during the 1983-84 school year. She met Defendant at a bonfire party in a field in Murfreesboro sometime in 1984. She arrived at the party with Pamela Dunn, a friend. After talking with Defendant at the party, Ms. Davenport left with Defendant in his vehicle. Both had been drinking beer and had "a buzz." Ms. Davenport had consented to having sex with Defendant, and he drove her down a gravel road to a dead end at a "turnaround" where he stopped the car. She later, in 2000, identified the rock quarry area where the victim's body was found in 1984 as the place where Defendant had taken her.

Ms. Davenport performed oral sex on Defendant, and they then engaged in sexual intercourse. This was Ms. Davenport's second sexual partner, and Defendant began to get "rough" and "aggressive" during intercourse. He had his hands in her hair, holding her down with an arm across her chest. Ms. Davenport told Defendant to stop several times, but he did not do so. Defendant became angry with Ms. Davenport and asked her if she wanted to end up like Laura Salmon. At the time, Ms. Davenport knew nothing about Laura Salmon, and she asked Defendant, "what do you mean, end up like her." Defendant replied that Laura Salmon was his ex-girlfriend and he had killed her.

Ms. Davenport became quiet and Defendant completed the sexual acts, and after both had cleaned up and dressed, Defendant drove Ms. Davenport to town. There was no conversation until Defendant let Ms. Davenport out of the car and told her to keep her mouth shut. Ms. Davenport told her father and her friend Pamela Dunn about the entire incident, but no one else until sometime in 2000 when detectives interviewed her.

## ANALYSIS

Tennessee Rule of Evidence 404(b) provides as follows:

(b)  Other Crimes, Wrongs, or Acts. – Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person or to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1)  The court upon request must hold a hearing outside the jury's presence;

(2)  The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3)  The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). The trial court must also find clear and convincing evidence that the defendant committed the prior crime or act. Tenn. R. Evid. 404(b) Advisory Commission Comment; *see State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985).

Prior to the effective date of the Tennessee Rules of Evidence on January 1, 1990, the same rules regarding evidence of "other crimes, wrongs, or acts" were well-established in Tennessee jurisprudence. *See id*. In *Parton*, the supreme court noted the well-settled maxim that "[e]vidence of other offenses is not admissible for the purpose of showing propensity or disposition on the part of the defendant to commit the crime for which he is on trial." *Id*. at 303. The court in *Parton* also relied upon and extensively quoted from *Bunch v. State*, 605 S.W.2d 227 (Tenn. 1980). In *Bunch*, the court held that "evidence that the defendant committed another crime is admissible *only if the ground for relevance is actually being contested in the case on trial*;" *Parton*, 694 S.W.2d at 302 (quoting *Bunch*, 605 S.W.2d at 230) (emphasis added).

*Parton*, decided in 1985, involved a case wherein the defendant was convicted of aggravated rape, and the "other crime" which was admitted into evidence was also aggravated rape, but against another victim. The supreme court held that the evidence was erroneously admitted, resulting in reversible error. *Parton*, 694 S.W.2d at 301.

In 1996, our supreme court decided the case of *State v. McCary*, 922 S.W.2d 511 (Tenn. 1996). That case involved a defendant who had been convicted of numerous sexual abuse offenses involving young boys. The issue on appeal was whether the trial court committed reversible error by admitting into evidence testimony of uncharged sexual offenses committed by the defendant several years prior to the dates of the offenses for which defendant was being tried. The supreme court held that admission of this testimony was reversible error. *Id*. at 515. In doing so, our supreme court held that, "in this context, Tennessee recognizes three instances in which evidence of uncharged crimes may be admissible: (1) to prove identity (including motive and common scheme or plan); (2) to prove intent; and (3) to rebut a claim of mistake or accident if asserted as a defense." *Id*. at 514.

The court in *McCary* concluded that identity was not a material issue because each victim was a member of a church youth group directed by the defendant, the closeness of the defendant's relationship was basically conceded, *and* the defendant denied committing all of the criminal acts charged and characterized his conduct with the victims as non-criminal. *Id*. The court further concluded that motive was not a material issue, because in the context of the facts, motive would be a material issue only if the defendant made it so, and he did not. The "common scheme or plan" exception for admissibility of "other crimes," which is often used to admit nearly identical crimes when *identity* is an issue, was also not applicable. *Id*. Since intent was not an element of the charged offenses of aggravated sexual battery, sexual battery, rape, and statutory rape, intent was not a material issue and "other crimes" evidence would not be admissible to prove intent. *Id*. Finally, because the defendant did not argue mistake or accident as a defense, "other crimes" evidence was not admissible to "rebut" accident or mistake. *Id*. The supreme court in *McCary* concluded after

a detailed analysis of whether the "other crimes" evidence was relevant to a material issue at trial, that it was not, and therefore constituted prohibited "propensity" evidence. *Id*.

As noted, the supreme court in *Parton* and *McCary* carefully analyzed the "other crimes" evidence and considered whether the evidence was relevant to a material, *contested* issue in the case. In *State v. Gilliland*, 22 S.W.3d 266 (Tenn. 2000), the supreme court held, "in every case in which evidence of other crimes, wrongs, or acts is offered, the trial judge should *carefully scrutinize* the relevance of the evidence and *the reasons* for which it is being offered." *Id*. at 271 (emphasis added).

We conclude that the trial court, when considering the admissibility of Rule 404(b) evidence, should find and state both *why and how* (in relation to the facts of the case) the proffered "other crimes" evidence is proof of the defendant's motive, the defendant's intent, or any other material, contested issue.

In *State v. Nichols*, 877 S.W.2d 722 (Tenn. 1994), the defendant appealed his sentence of death following a guilty plea to felony murder. In one of the issues, the defendant argued that the trial court erred by allowing into evidence his prior conviction in 1984 for assault with intent to commit rape. This conviction was not listed by the State as an "aggravating circumstance" in support of the imposition of the death penalty. *Id*. at 732. Defendant's proof at the sentencing hearing indicated that he had committed the crimes to which he pled guilty (murder in perpetration of rape, aggravated rape, and first degree burglary) because they were the result of "a sudden feeling" which overcame him. His counsel also had attempted to show that the criminal conduct was not consistent with his "passive nature." *Id*. In ruling the evidence admissible, the court in *Nichols* held, "[i]nstead of admitting the 1984 assault conviction to prove that the murder in this case conformed to defendant's previous violent behavior, the court admitted the conviction to rebut evidence that the defendant was a docile person." *Id*.

In *State v. Copenny*, 888 S.W.2d 450 (Tenn. Crim. App. 1993), the defendant was convicted of second degree murder following a jury trial. Ms. Jones testified that she and defendant had lived together at one time, and that she had a child by the defendant. The defendant left town, and then Ms. Jones began dating the victim of the murder. Ms. Jones testified that on one occasion after she began dating the victim, she was in the victim's vehicle when the defendant approached and told her to get out of the car. She refused to comply with his request. The defendant exchanged words with her. As she began to drive away, the defendant said "Bitch, . . .if I want to get to you, I could get to you." The defendant then pulled and broke out the driver's side window of the victim's car. Our court held that this Rule 404(b) evidence was relevant and admissible to prove the defendant's motive for committing the crime of murder against the victim. *Id*. at 456.

In *State v. Maddox*, 957 S.W.2d 547 (Tenn. Crim. App. 1997), the defendant was convicted of aggravated robbery of a Longhorn Steakhouse restaurant in Chattanooga. During the trial, the State was allowed to introduce into evidence, through letters written by the defendant to his live-in girlfriend and through the testimony of the girlfriend: (1) that the defendant, his girlfriend, and a

third party had a plan for the third party to rob the donut shop where the defendant's girlfriend worked in order to obtain funds for the defendant's bond; (2) references to unspecified criminal charges against the defendant and a charge of attempted first degree murder against the third party; and (3) that the defendant had stolen a check that his girlfriend had endorsed and passed, and for which she had been convicted of forgery. *Id*. at 552-53.

Our court held that the trial court committed reversible error in admitting the evidence of "other crimes, wrongs, or bad acts." *Id*. at 553. The trial court had not conducted an appropriate hearing to determine admissibility of the Rule 404(b) evidence. Our court held that much of what was discussed in defendant's letters was immaterial and not relevant. *Id*. at 552. Defense counsel had attempted to impeach the testimony of the live-in girlfriend with her conviction for forgery. Our court held that this did not "open the door" for Rule 404(b) proof that the defendant had stolen the check which ultimately was forged and led to the witness's conviction. *Id*.

Other cases have shown that a careful analysis of the proposed "other crimes" evidence and *how or why* it is relevant to a matter actually in issue is required before the Rule 404(b) evidence is admissible. *See State v. Moss*, 13 S.W.3d 374, 383-84 (Tenn. Crim. App. 1999) (evidence of defendant's prior sexual misconduct with his minor daughter was relevant to show his motive to murder his estranged wife in order to regain access to his daughter); *State v. Jones*, 15 S.W.3d 880, 894-95 (Tenn. Crim. App. 1999) (in a trial for murder, testimony that defendant stated he was going to kill the victim because the victim had told another person about defendant's involvement in a stolen car parts ring, and that the person had informed defendant's parole officer, was admissible to prove defendant's motive to kill the victim).

Even if relevant to a material issue which is actually contested at trial, the Rule 404(b) evidence cannot be admitted into evidence if its probative value is outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b)(3). The danger is that even if relevant to a contested material issue, the "other crimes" evidence may be actually more in the nature of prohibited "propensity evidence." As stated in *State v. Roberts*, 703 S.W.2d 146 (Tenn. 1986), "[w]hen the prior conviction was shown, it may have settled all questions for the jury, allowing them to conclude that because *he did it once, more than likely he did it again*." *Id*. at 147 (emphasis in original).

In *State v. Luellen*, 867 S.W.2d 736 (Tenn. Crim. App. 1992), the two defendants were convicted of possession of cocaine with intent to sell. Law enforcement officers received information that the defendants were going to go from Hardeman County to Memphis to obtain cocaine. Surveillance was begun and a pickup truck containing the defendants and a fourteen-year-old boy was stopped by police. The only cocaine found was 32.4 grams placed into five bags inside an envelope, which was discovered inside the juvenile's shirt after a search. The defendants, at the time of their arrest at the scene of the stop, denied having any knowledge of the cocaine found on the juvenile. *Id*. at 737-38.

Following a hearing outside the presence of the jury, the trial court allowed the prosecutor to elicit testimony from a law enforcement officer that on one occasion, one of the defendants was

found in possession of cocaine in his pants pocket, and on another occasion, he was found in possession of marijuana following a search of his home. The other defendant was found in possession of cocaine following a search of his residence. *Id*. at 740.

A panel of our court held,

> In the present case, the evidence of the prior wrongs was introduced to show intent and lack of mistake pursuant to Rule 404(b). Because the appellants contended they had no knowledge that the cocaine was in the possession of the juvenile Williams, the state introduced evidence of three prior incidents involving drugs to prove that this event did not take place by pure chance. Evidence relating to appellants' actual knowledge of the cocaine is relevant to the case.

*Id*. at 741.

However, an officer of the Hardeman County Sheriff's Department also testified about an inculpatory admission by one of the defendants, while he was exercising in the jail, regarding his trip to Memphis to obtain cocaine and his subsequent arrest. Also, the juvenile found in possession of the cocaine testified at trial that when their vehicle was stopped by police, one defendant told the other to "get the package." The second defendant got the package from beneath the dashboard and put it into the juvenile's pocket. The juvenile testified he did not know the package contained cocaine until after the search by the officer. The juvenile knew both defendants. He lived in Memphis. On the day of the offense, he saw them in Memphis and requested a ride from them to his grandmother's house in Hardeman County. In light of the testimony of the juvenile and the Sheriff's Department officer, our court held that even though relevant, the probative value of the "other crimes" evidence was "slight in comparison to the prejudicial effect that resulted." *Id*. Our court reversed the conviction and remanded for a new trial.

*Luellen* highlights the proposition that issues regarding "other crimes" evidence and their resolution under Rule 404(b) can often be a fluid issue. In other words, the strong implication in *Luellen* is that if the juvenile witness and the Sheriff's Department officer had not testified, or had testified differently, admission of the "other crimes" evidence might not have been reversible error. While pre-trial hearings on Rule 404(b) issues are not prohibited, and are apparently not unusual, a risk is posed when such determinations are made pre-trial. Evidence that may appear pre-trial to be relevant to a material, contested issue, actually may not be so after the trial has begun, and *vice-versa*. Also, based upon how the proof develops at trial, and/or the theories of the defendant and State are set forth in opening statements, direct examination or cross-examination, "other crimes" evidence that may appear pre-trial to be more probative than prejudicial may not be so after the trial begins, and *vice-versa*.

As noted above, our court granted the applications of both the State and Defendant in this case to review the trial court's interlocutory order pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. Upon further reflection, it has been considered that Defendant's application

may have been improvidently granted; nevertheless we have concluded that we will address the issues raised in both the appeal by Defendant and the State. However, our disposition of the issue is bound by the record as it exists at the present time.

The cases discussed thus far all involve a defendant who committed "other crimes, wrongs, or acts" against a person who was *not* the victim of the case being tried, or the "other crime, wrong, or act" was not the type of crime that is against a specific victim. *See Parton*, 694 S.W.2d 299 (Tenn. 1985), *McCary*, 922 S.W.2d 511 (Tenn. 1996), and *Nichols*, 877 S.W.2d 722 (Tenn. 1994) (aggravated rape or other sexual abuse against a victim other than the victim(s) involved in the cases being tried); *Copenny*, 888 S.W.2d 450 (Tenn. Crim. App. 1993) (threatening behavior toward a former girlfriend who had begun dating the victim); *Maddox*, 957 S.W.2d 547 (Tenn. Crim. App. 1997) (conspiracy to rob a business other than the robbery which was the subject of the trial, and theft of a check later forged by another person); *Moss*, 13 S.W.3d 374 (Tenn. Crim. App. 1999) (sexual misconduct with a juvenile who was not the victim of the homicide for which defendant was tried and convicted); *Jones*, 15 S.W.3d 880 (Tenn. Crim. App. 1999) (defendant's involvement in a stolen car parts ring and the fact that he was on parole); *Luellen*, 867 S.W.2d 736 (Tenn. Crim. App. 1992) (defendant's possession of illegal drugs on occasions prior to the incident for which they were on trial).

Of some concern is the fact that there is case law which seems to stray from the "how" and "why" relevancy analysis required under Rule 404(b) in cases where (1) the crime for which a defendant is charged is a violent crime; and (2) the prior bad acts or "other crimes" evidence involves violence and the victim of the "other crimes" is also the victim of the offense in the case for which a defendant is being tried.

In *State v. Glebock*, 616 S.W.2d 897 (Tenn. Crim. App. 1981), decided prior to *State v. Parton*, *supra*, the defendant was convicted of assault with intent to commit first degree murder of his former wife after he shot her four times in the neck, resulting in paralysis from her neck down. Evidence admitted at trial showed that prior to the shooting, defendant had extensively harassed the victim, forcing her to move from Ohio to Memphis, where she subsequently remarried. There was proof that defendant broke into her apartment in Ohio, and that he sent a threatening post card to her before she moved to Tennessee. The defendant argued on appeal that the trial court erred by allowing this evidence to be admitted. Our court rejected this argument and held that "[t]he relations existing between the victim and the defendant prior to the commission of the crime are relevant. These relations indicate hostility toward the victim and a settled purpose to harm or injure her." *Id*. at 905-06 (citations omitted).

In *State v. Turnbill*, 640 S.W.2d 40 (Tenn. Crim. App. 1982), also decided prior to *Parton*, the defendant was convicted of the first degree murder of James Pollard, with whom defendant and his girlfriend shared a room at a rescue mission in Knoxville. The proof showed that death resulted from a vicious beating of the victim by the defendant that lasted twenty-five to thirty minutes. The homicide occurred in March, 1980. The defendant's girlfriend was present during the offense. Evidence was also introduced at trial that defendant *had been arrested* for the strong-armed robbery

of Mr. Pollard in November, 1979. Defendant pled guilty, in a negotiated agreement, to the offense of criminal trespass, and served time in jail before being released about a week prior to the homicide. The victim allowed the defendant to stay with him after the defendant's release from jail. Proof of the defendant's arrest for the strong-armed robbery was introduced at the murder trial. Defendant argued that this was reversible error, because he was only convicted of a misdemeanor, rather than a felony. The trial court allowed the "other crimes" evidence because it was proof of: (1) the relationship between the defendant and the victim, (2) the closeness in time of the two incidents, and (3) the defendant's intent. *Id*. at 46. There was evidence that prior to defendant's vicious assault upon the victim, the defendant had accused the victim of "snitching" on the defendant and his girlfriend, causing them to be run out of the rescue mission by the manager. Relying on *Glebock*, this court rejected the defendant's argument and held,

> In this case, as in *Glebock*, the prior relations between the victim and the appellant were relevant matters for the jury's consideration on the question of the appellant's intent. Even though not actually convicted of the robbery, the appellant was convicted of a crime against the [victim]. The circumstances of that crime were also relevant to the issue of the appellant's intent. The admission of this testimony was not error and this issue has no merit.

*Id*. at 47.

In *State v. Smith*, 868 S.W.2d 561 (Tenn. 1993), the defendant was convicted of the premeditated first degree murders of his estranged wife and her two sons from a previous marriage. He received the death penalty, and the convictions and penalty of death were affirmed by the supreme court. Proof was introduced at trial of two incidences of prior "other crimes, wrongs or acts" by the defendant. In one incident, defendant and one of the boys got into a fight when the defendant and his wife were arguing. Defendant kicked the boy in the leg, bit him on the back, and tried to kick the boy in the groin. Defendant ordered his wife and sons to leave, and put a gun to the boy's head. He threatened to kill his wife and her sons if she took out a warrant or called the police. In the other incident, the wife victim had gone with the defendant to his trailer to get her car and other personal items. The defendant tied her up, raped her, and ran a knife across her throat and stated he was going to kill her. Defendant argued that the evidence was inadmissible under Tennessee Rules of Evidence 404(b). In addressing the issue, the supreme court stated:

> In response to the Defendant's assertions that the evidence of the two episodes was irrelevant and inadmissible under Tenn. R. Evid. 404(b), the State cites a line of cases, *see, e.g., State v. Turnbill*, 640 S.W.2d 40, 46-47 (Tenn. Crim. App. 1982); and *State v. Glebock*, 616 S.W.2d 897, 905-906 (Tenn. Crim. App. 1981), which hold that violent acts indicating the relationship between the victim of a violent crime and the defendant prior to the commission of the offense are relevant to show defendant's hostility toward the victim, malice, intent, and a settled purpose to harm the victim. Also, in the present case, the victims, despite the Defendant's threats to kill them if they did so, had filed charges against the

Defendant based on these prior assaults. *The evidence of these violent episodes was admitted not to prove the Defendant acted in accord with this character but as part of the proof establishing his motive for the killings.* The probative value of this evidence is not outweighed by the danger of unfair prejudice. *See* Tenn. R. Evid. 404(b)(3); *see generally* 4 Am. Jur. 2d Homicide § 274 (1968); 41 C.J.S. Homicide § 206 (1991).

*Smith*, 868 S.W.2d at 574 (emphasis added).

Under *Smith*, therefore, when there are prior bad acts which indicate the relationship between the defendant and the victim of a violent crime, these prior violent acts are relevant to show the defendant's hostility toward the victim, the defendant's malice, the defendant's intent, and the defendant's settled purpose to harm the victim. This rule set forth by the supreme court in *Smith* is seemingly *per se* and does not require a case-by-case analysis of the particular facts involved. The holding in *Smith* is *not* that the evidence of the defendant's prior bad acts was relevant to prove any of the other facts, but rather to prove the defendant's *motive*, and this language in *Smith* has been subsequently relied upon by the courts of this state. It further appears that the requirement under Rule 404(b) that the evidence be relevant to a material, *contested* issue, *see Parton*, 694 S.W.2d 299, 302 (Tenn. 1985) (quoting *Bunch v. State*, 605 S.W.2d 227, 229-30 (Tenn. 1980), has been overlooked or abandoned when the prior bad acts sought to be admitted are violent ones against the same victim in a crime of violence. For instance, in *State v. Dellinger*, 79 S.W.3d 458, 484 (Tenn. 2002), the opinion of this court was attached as an appendix to the supreme court's opinion, which noted:

Indeed, the Tennessee Supreme Court has previously recognized the evidence of *prior acts of violence against the victim* are admissible under Rule 404(b) *because the evidence is relevant* to show the defendant's hostility toward the victim, malice, intent, and a settled purpose to harm the victim. *State v. Smith*, 868 S.W.2d 561, 574 (Tenn. 1993).

*Dellinger*, 79 S.W.3d at 484.

## APPLICATION OF THE LAW

With the above-discussed law in mind, we shall apply it to each individual witness whose proposed testimony was addressed in the trial court's order.

**Shelly Davenport Tedrow**

We conclude that the trial court did not abuse its discretion, and we find that the State has not argued that the trial court erred by excluding certain testimony of Shelley Davenport (Tedrow) that is evidence of prior acts by Defendant. Accordingly, this portion of the trial court's order is affirmed.

**Marty Milam, Laurie Carr, and Barbara Smith**

The State has not contested that portion of the trial court's order excluding this evidence, and we further find that the trial court did not abuse its discretion. This portion of the trial court's order is affirmed.

**Scott Mason**

The trial court found that the proposed testimony of Mr. Mason did not constitute clear and convincing evidence of a prior bad act by Defendant. Therefore, a necessary requirement for admissibility was lacking. The trial court's order excluding the testimony of Scott Mason is affirmed.

**Reed Ridley and John Jolly**

The trial court's order insofar as it excludes the testimony of Mr. Ridley and Mr. Jolly is reversed. The trial court found that their testimony was more prejudicial than probative because it was cumulative of the testimony of other potential witnesses. This determination, if appropriate, must be made during the trial and not prior thereto. Proof is not cumulative in a trial until the trial has begun. The trial court's ruling in this regard was premature. Additionally, the "cumulative evidence" basis for exclusion of testimony under Tenn. R. Evid. 403 has a purpose to promote judicial economy and efficiency rather than to exclude prejudicial evidence. *State v. Jerry Wayne Pointer*, 2003 Tenn. Crim. App. LEXIS 174, No. M2001-02269-CCA-R3-CD, slip op. at 21 (Tenn. Crim. App. at Nashville, Feb. 28, 2003) *perm. to app. denied* (Tenn. 2003) (citing Neil P. Cohen et al., *Tennessee Law of Evidence*, § 4.03[7] (4th ed. 2000)).

However, we stress that we are not reversing this portion of the trial court's order on substantive grounds. We are not holding that the trial court erred by excluding the testimony because it was more prejudicial than probative. We are merely holding that the determination to exclude the evidence under Rule 404(b) because its cumulative nature makes it more prejudicial than probative must be made, if at all, during the trial and not prior to the trial.

**Bill Tennpenny**

The trial court found that the testimony of Mr. Tennpenny "may" be clear and convincing evidence. Before prior bad acts are admissible, relevant case law and Tennessee Rule of Evidence 404(b) require that the trial court "must" find clear and convincing evidence of the prior bad act. Accordingly, the trial court's order, insofar as it excludes the testimony of Bill Tennpenny is affirmed.

**Connie Shelton, Melinda Edwards, Mary Lester,
Terri Brown McCrary, Kim Roberts, and Lourene Mackey**

Insofar as it concerns the testimony of these witnesses regarding acts committed by Defendant against the victim (but not including statements of the victim, which is addressed below), the order of the trial court is affirmed. At the time of the victim's death, first degree murder was the unlawful, premeditated, deliberate, and with malice aforethought, killing of a victim by the defendant. Tenn. Code Ann. § 39-2-202(a) (1982) (repealed 1989). Under prior law, "malice aforethought" was an essential element the State had to prove beyond a reasonable doubt. "Malice" and "malice aforethought" are interchangeable terms. *Campbell v. State*, 491 S.W.2d 359, 362 (Tenn. 1973). In *Fox v. State*, 441 S.W.2d 491 (Tenn. Crim. App. 1968) this court explained express malice as follows:

> [I]t is clear that *malice* is an essential ingredient of murder. A case of homicide cannot be murder unless at and before the killing the wicked intent, constituting malice aforethought, exists in the mind of the slayer. Malice is an intent to do an injury to another, a design formed in the mind of doing mischief to another.
>
> *Express malice* is actual malice against the party slain; it exists where a person actually contemplates the injury or wrong which he inflicts. It is shown where the assailant kills his victim for the purpose of wreaking his vengeance, or to gratify feelings of animosity, hatred, or ill will, and where one, with a sedate and deliberate mind and formed design attempts to kill another, which formed design is evidenced either by words or by external circumstances indicating the inward intentions – such as laying in wait, *antecedent menaces*, *former grudges*, and *concerted schemes to do the victim some bodily harm*.

*Id*. at 495-96 (emphasis added).

Under *State v. Smith*, prior acts of violence between the defendant and the victim of a violent crime are admissible to prove the defendant's malice. Malice is an essential element of the crime for which Defendant is charged in this case. Therefore, the "prior crimes, wrongs, and acts" evidence of witnesses Connie Shelton, Melinda Edwards, Mary Lester, Terri Brown McCrary, and Kim Roberts is admissible, where the trial court has found that the evidence submitted by these witnesses is clear and convincing. Where the trial court excluded some of the testimony of one or more of these witnesses because the proof was not clear and convincing, that portion of the order is also affirmed.

The order granting the applications of both the State and Defendant to appeal, pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, was limited to the Tennessee Rules of Evidence 404(b) issues decided by the trial court. Evidentiary issues regarding the admissibility of hearsay testimony, including admissions by Defendant, excited utterances, and other testimony regarding statements of the victim were not included in the application or in the order granting the Rule 9 appeal, and are therefore not resolved in this interlocutory appeal.

-21-

## CONCLUSION

For the reasons stated, the interlocutory order of the trial court is affirmed in part, reversed in part, and this case is remanded to the trial court for further proceedings.

_____
THOMAS T. WOODALL, JUDGE